THE STATE OF DELAWARE, ex rel. J. Gordon Smith, et al., Plaintiffs Below, Appellants, v. 0.24148, 0.23831 and 0.12277 ACRES OF LAND, HARVEY C. FENIMORE, et al., Defendants Below, Appellees.

(*April* 24, 1961.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Donald W. Booker* for appellants.

*Samuel R. Russell* (of Morford, Young and Conaway) for appellees.

Supreme Court of the State of Delaware, No. 55, 1960.

WOLCOTT, J.:

This is an appeal from a judgment of the Superior Court awarding damages against the State Highway Department for an alleged trespass to the lands of the appellees. The appellants are the members of the State Highway Department (hereafter State), and the appellees are certain individuals owning a tract of land in New Castle County (hereafter Fenimores).

This appeal grew out of a condemnation proceeding instituted April 27, 1956 by the State. To the complaint filed, the Fenimores answered and filed a counterclaim seeking damages for an alleged trespass by the State upon their land.

The State moved to dismiss the Fenimores' counterclaim; the State's motion was denied on August 30, 1957, and, pursuant to Rule 42(b), Superior Court Rules, *Del. C. Ann.*, the Superior Court directed that the counterclaim should be severed for trial before a jury as an issue separate from the State's complaint for condemnation.

On March 31, 1958, a hearing was held before condemnation commissioners on the State's complaint for condemnation, and a judgment entered authorizing condemnation and making an award to the Fenimores. The Fenimores appealed the judgment of condemnation which was reversed in part and affirmed in part by this Court. See 1 *Storey* 332, 145 *A.* 2d 388.

In the meantime, on March 27 and April 1, 1958, trial was had before the Superior Court without a jury on the Fenimores' counterclaim. On November 16, 1960, judgment was entered for the Fenimores in the amount of $7,898.00 as damages suffered by them as a result of trespass by the State. From this judgment, the State now appeals.

It is necessary to state briefly the facts concerning the trespass. It suffices to say that the Fenimore land, a portion of which is involved in this litigation, consists of a triangular piece bounded on the northeast by Center Road; on the southwest by Centreville Road, and on the northwest by Kirkwood Highway. The slope of land generally is from this triangular piece across Center and Centreville Roads. For a plot of the land see 1 *Storey* 334, 145 *A*. 2d 389.

There is some confusion in this record concerning the prior proceedings between the parties. It is apparent that the State has acquired title by condemnation to the land designated as No. 1 on the plot appearing at 1 *Storey* 334. Yet, the State insists its condemnation action was dismissed despite the affirmance by this Court of the condemnation of Parcel No. 1. Since the parties to this appeal apparently assume this to be the fact, we will do the same since it seems fairly clear to us that the acts of trespass complained of were committed on land admittedly owned at the time in fee by the Fenimores and for which acts the Fenimores have not been compensated in any condemnation proceeding.

Some time around 1920, the Fenimores had installed a pipe underneath an open drainage ditch running along the westerly side of Center Road for the purpose of carrying off their property surface water and the overflow from a septic tank. The ditch was located on land owned by the Fenimores in fee but over which there was apparently a public easement for highway purposes. This pipe ultimately was connected by the State to a catch basin at the intersection of Center and Centreville Roads on the side of Centreville Road next to the

Fenimores' property and located partially, at least, on the Fenimore land. From that point the drainage was led under the Centreville Road to a catch basin on the other side, and from there through a pipe under Center Road, discharging into an open ditch running southerly along the side of Centreville Road.

All of this drainage installation was installed by the Fenimores with the express approval of the then authorities having jurisdiction over public highways, or by action later of the State, itself. In any event, the drainage system prior to the alleged trespass by the State carried off surface water and overflow from septic tanks from the property of the Fenimores, discharging it in an open ditch running southerly from the intersection of Center and Centreville Roads.

It appears that for a number of years prior to the events leading to this litigation either the authorities did not know of the presence of sewage in the drainage system or else took no steps to have it corrected. In any event, it appears that it was State action which caused the drainage from the Fenimores' property to be connected through the catch basin into what is now the storm sewer system installed by the State at this locality.

Despite the unsuccessful conclusion of its condemnation action, the State proceeded to construct the new paved highway on the existing right of way. In the course of this construction, the State removed the drainage pipe originally installed by the Fenimores around 1920 and replaced it with an open ditch which now leads to the catch basin described above.

At the instigation of the State, apparently, the State Board of Health was notified of the condition and after investigation ultimately ordered the Fenimores to connect their sewage disposal to an existing county sanitary sewer crossing

Center Road approximately 1,000 feet westerly from its intersection with Centreville Road. It appears that this possible location for connection is the only feasible one available to the Fenimores to comply with the order of the State Board of Health because of the topography of the area.

The Fenimores now complain that the action of the State in removing their drainage system will result in compelling the expenditure by them of a large sum of money to restore a drainage system which theretofore had been perfectly satisfactory, and connect that system to the county sanitary sewer. In addition, the Fenimores claim damages for the removal of certain top soil from the point of their land at the intersection of the two roads, claiming that access to the premises has thereby been destroyed.

The Superior Court entered a judgment of $7,989 in favor of the Fenimores. Of this amount, the sum of $2,000 was awarded for the taking of the top soil and the prevention of access to the premises. The sum of $1,989 was awarded as the cost of reinstalling the drainage system removed by the State. The sum of $4,000 was awarded as the cost of connecting the reinstalled drainage system from the point of intersection of Center and Centreville Roads 1,000 feet to the existing county sewer.

The State makes no real attack upon the award of $2,000 for the removal of the top soil. It does, however, contest vigorously the award of the total of $5,989 for the reinstallation and connection with the sanitary sewer of the previously existing drainage system.

Initially, the State attacks the order separating the counterclaim from the original condemnation action and granting a separate trial upon it. The argument basically is that the filing of a counterclaim and the separation of it from the condemnation action is a suit against the State without its

consent and, therefore, that it should be dismissed. We think the point not well taken.

Article I, § 8 of the Delaware Constitution, *Del. C. Ann.* provides that no person's property shall be taken for public use without his consent and without compensation being made.

 It seems well settled that such constitutional provisions are self-executing waivers on the part of the State of its sovereign immunity. Consequently, where there is a taking of property for public use without a condemnation proceeding, the filing of a separate action for damages against the State by the landowner as a matter of law has been consented to by the State. This is a common-law remedy and depends in no wise upon the institution by the State of condemnation proceedings. See an annotation in 20 *A. L. R.* 516; 18 *Am. Jur., Eminent Domain,* § 384; 6 *Nicholson, Eminent Domain* (3rd Ed.), § 30.1.

 We think the order under Rule 42(b) of the Superior Court separating for trial the Fenimores' counterclaim was eminently proper, and was one contemplated by such rule as being "in furtherance of convenience or to avoid prejudice". Since the counterclaim was permissive and was based upon a common-law action in which a right to trial by jury exists, it obviously was most proper to separate it for trial since condemnation proceedings under the statute are before three commissioners and do not involve the impaneling of a common-law jury.

 There can be no doubt but that this counterclaim was permissive since it is not a claim "arising out of the transaction or occurrence that is the subject matter of the opposing party's claim". Superior Court Rule 13(b). Thus, it follows that the State's contention that the dismissal of the condemnation action carried with it an automatic dismissal of the counterclaim is incorrect since those two causes were

separate and not dependent upon each other and, as such, would not be affected by the dismissal of either. 3 *Moore's Federal Practice,* § 13.23.

The second phase of the State's attack upon this judgment relates to the proof of damages. Again, asserting that the right of the Fenimores to recover damages for State's trespass is entirely dependent upon the existence of a live condemnation action, it is argued that the measure of damage for the trespass is the difference in value of the land before the trespass and the difference in value of the land after the trespass. The State therefore argues that since there is no evidence whatsoever in this record of value before and after the trespass, necessarily the judgment is not supported by evidence.

In this argument, the State falls into the same error with which it regarded the separation of the counterclaim for trial. The counterclaim is not, as the State says, "an inverse condemnation", whatever that may be, but is an independent common-law action for damages to the bringing of which the State has consented by Article I, § 8 of the Constitution. We have, therefore, a common-law action for damages resulting from trespass. In such actions the measure of damages is a sum sufficient to make the injured party whole and restore him to the position he was in before the trespass. 52 *Am. Jur., Trespass,* § 47; *Schelich v. Mayor, etc., of City of Wilmington,* 1 *Boyce* 57, 74 *A.* 367; *White, Inc. v. Metropolitan Merchandise Mart,* 9 *Terry* 526, 107 *A.* 2d 892. We think, therefore, that the Fenimores are entitled to a judgment against the State in such amount as will truly compensate them for that which the State has taken from them.

What are the facts concerning this? It is clear that long prior to this litigation the Fenimores had installed at their own expense, with approval of the proper public authorities, a drainage system. Some time later, the State connected this drainage system with its storm sewer, not at the

request of the Fenimores. It is thus apparent that prior to the order of the Board of Health the Fenimores had a drainage system discharging surface water and sewage from their property to an open ditch in the southwest corner of the intersection of Center and Centreville Roads, a point 1,000 feet from the existing county sewer along Centreville Road. Since the State's trespass has deprived the Fenimores of this drainage system, it would seem necessary in order to give the Fenimores back that which they have had taken from them that a judgment be entered for them in an amount sufficient to reinstall an adequate drainage system at least to this point of discharge. We therefore think the award of $1,989 for this purpose was entirely proper.

The award of the item of $4,000 to connect this drainage with the county sewer from its point of discharge, however, we think improper since this connection was not in existence prior to the trespass and, consequently, the State has done nothing to take this from the Fenimores. Presumably, even if the prior system had remained undisturbed, the Board of Health could have ordered the connection with the county sewer. We do not pass upon the point, however, for it is not before us. In any event, however, we are of the opinion that this item of damages must be disallowed for the State's trespass cannot be regarded as having taken from the Fenimores something which was never in existence.

To be sure, the Fenimores argue that they are entitled to the cost of connecting to the county sewer, apparently upon the theory that if the State had not brought the matter to the attention of the Board of Health there would have been no order for them to connect. In some nebulous fashion, the conclusion is then reached that the State is responsible for the additional cost. We have difficulty in following the argument for the fact is plain that the Fenimores seek under this theory to compel the State to install for them something they have never had.

Whether or not the Board of Health's order is valid under the statutes is as yet undecided. Indeed, the Fenimores, as the record shows, contest the validity of the Board of Health's order and have notified it that they intend to resist compliance. Upon analysis, therefore, the Fenimores seek to obtain money to install a pipe they have never had and which they claim they cannot be compelled to install. Obviously, a claim of that nature is beyond the measure of their damages.

The result is, since there is no real dispute as to the $2,000 award for the taking of top soil and denying of access, and since we think the award of $1,989 a proper award to replace that which has been taken from the Fenimores, the judgment below must be reversed and the cause remanded with instructions to the Superior Court to enter judgment in favor of the Fenimores in the amount of $3,989.