H. Miller DONOVAN, Plaintiff Below, Appellant and Cross-Appellee,

v.

The DELAWARE WATER AND AIR RESOURCES COMMISSION, an agency of the State of Delaware, and the Delaware State Board of Health, an agency of the State of Delaware, Defendants Below, Appellees and Cross-Appellants,

v.

HCA FOOD CORPORATION, a New York Corporation, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted Oct. 15, 1975.

Decided April 2, 1976.

John J. Schmittinger, of Schmittinger & Rodriguez, P. A., Dover, for plaintiff below, appellant and cross-appellee.

A. Gary Wilson, Deputy Atty. Gen., Wilmington, for The Delaware Water and Air Resources Commission and The Delaware State Board of Health, defendants below, appellees and cross-appellants.

Michael Joseph Rich, of Tunnell & Raysor, Georgetown, for HCA Food Corporation, defendant below, appellee.

Before HERRMANN, Chief Justice, DUFFY, Justice, and QUILLEN, Chancellor.

DUFFY, Justice.

In this consolidated action H. Miller Donovan (plaintiff) appeals from a Superior Court judgment which affirmed an order of the State Water and Air Resources Commission (WARC) [1] and denied him a money judgment.

I

Plaintiff had for many years operated a garbage dump in Sussex County and during the period in question had contracted with defendant HCA Food Corporation (HCA) to haul from its Doxee Plant in Lewes all refuse clamshells. He deposited such shells in the dump and after a period of drying and sun bleaching sold them for profit.

In the spring of 1968 the State Board of Health [2] received a complaint from a resident living near the dump and, following inspection, Donovan was informed that the dump constituted a nuisance in violation of 16 Del.C. § 1703 [3] and that the condition

1. Now the Division of Environmental Control, Department of Natural Resources and Environmental Control.

2. Now the Division of Physical Health, Department of Health and Social Services.

3. 16 Del.C. § 1703 provides:
 "The bringing in of garbage from any place without the State without a permit, the depositing of garbage in any area not named by the State Board of Health as an area suitable for the disposal of such garbage, and the disposal of any garbage in an unsanitary manner shall be deemed a nuisance under section 310 of this title and subject to the penalties provided in section 317 of this title."

must be corrected without delay. Odors and flies were the primary complaints. During July and August of that year at least thirteen unsatisfactory reports of the dump's condition were filed by inspectors and, as a result, a public hearing was held on September 16, 1968. See 7 Del.C. § 6006. After the hearing plaintiff was granted a permit for continued operation of the dump until April 1, 1969 but was required, among other conditions, to submit an "application for approval to continue this operation . . . prior to March 1, 1969."

During the period authorized by the temporary permit, the Solid Waste Disposal Code, 7 Del.C. § 6025, was enacted and plaintiff was informed that approval of both the Board of Health and WARC would be required for future operation of the dump. On February 25, 1969 Donovan requested such approval and proposed a method of applying chemicals to the shells. The Board of Health subsequently informed him that such proposal was unsatisfactory, but WARC approved continued operation provided Donovan complied with certain specified conditions. Donovan attempted to so comply but numerous unfavorable reports were filed by the Agency culminating in a cease and desist order, dated June 27, 1969, against operation of the dump. A similar order had been entered a week earlier by the Board of Health against HCA prohibiting it from delivering shells to Donovan. As a result of the orders Donovan stopped carrying shells from the HCA plant to his dump.

Thereafter the State entered into a contract with HCA, under provisions similar to the latter's agreement with Donovan, by which the State agreed to dispose of the shells.

Donovan appealed from the WARC order to the Superior Court pursuant to the provisions of 7 Del.C. § 6009.

Donovan had also filed an action against the Agencies and HCA seeking money damages for breach of contract, for appropria-

tion of his property by the State and for other relief. The suit was filed in the Court of Chancery but was dismissed on jurisdictional grounds and transferred to the Superior Court, 10 Del.C. § 1901, where it was consolidated with the appeal from the WARC decision.

Upon review of the record made at the WARC hearing and the testimony at trial, the Court found that two motives on the part of the State led to the cease and desist orders: the first was "genuine concern with the elimination of an alleged foul smelling and fly infested dump"; the second was "an ulterior motive to obtain clam shells for the purpose of creating a bed [in Delaware Bay] for state sponsored oyster breeding." While condemning the methods used by the State, the Court nevertheless found substantial and competent evidence to sustain the actions of the Agencies and therefore affirmed the administrative decision. Damages were not awarded but costs were assessed against the State.

■ As to HCA, the Court found that throughout the realignments it was an innocent bystander, ready and willing to perform its contract with Donovan; the Court concluded that HCA is not liable to Donovan for breach of contract. We agree with that finding and conclusion.

Plaintiff appeals from the order affirming the WARC decision and denying him money damages, while the State cross appeals from the order obliging it to pay costs.

II

Before considering plaintiff's arguments on the merits we must state our understanding of what is at issue in this appeal which involves review of both an administrative Agency ruling and denial of a claim for money damages made against the State and a private corporation.

We understand from his brief that plaintiff seeks in this Court a mandate revers-

ing the judgment of the Superior Court "with directions . . . to enter judgment on behalf of the plaintiff in the amount of $100,921.73 with interest and costs." In support of his claim to that relief plaintiff contends that there were errors in the administrative proceedings which had the effect of denying him due process of law, and that the evidence before the Agencies was not sufficient to support the orders entered. Those contentions do not appear to be made to establish a basis for relief in further administrative proceedings. They are being made for the purpose of supporting Donovan's right to a money judgment which, he contends, had its genesis in a conspiracy among State officials and its culmination in the orders and the taking of his property without just compensation.[4]

Donovan's claim to a money judgment against the State thus squarely puts before the Court the issue of sovereign immunity which was argued to but not decided by the Superior Court.

### III

Plaintiff says that the State Agencies engaged in a conspiracy to deprive him of his property ("his clam shells") without payment of just compensation. The Agencies argue that the doctrine of sovereign immunity protects the State from such a claim and, in our view, that is a complete defense to the action.

 It is settled law in Delaware that the State is immune from suit without its consent. *Shellhorn & Hill, Inc. v. State,* Del.Supr., 187 A.2d 71 (1962). And that immunity extends to State Agencies. *Varity Builders, Inc. v. Polikoff,* Del.Supr., 305 A.2d 618 (1973) ; *Wilmington Housing Authority v. Williamson,* Del.Supr., 228 A. 2d 782 (1967). The doctrine of immunity is derived from the Constitution and is not dependent on the merits of the claim asserted nor upon the purity of the State's conduct.

 Assuming *arguendo* that there was wrongful motivation by the State *qua* State in closing Donovan's dump and contracting with HCA, the fact that it was wrongful does not bar the State from asserting its immunity. 2 Harper and James, *The Law of Torts,* § 29.1 et seq. Indeed, it is precisely in such a situation that the doctrine applies.[5]

 Sovereign immunity may, of course, be waived and, given the growing activities of government and the strong trend to distribute losses across the community, that should be done more often than it is. And according a remedy when there is a right is certainly closer to our current notion of justice than is the ancient dictum that the king can do no wrong. But the fact is that sovereign immunity is not often waived in Delaware.

 As a basis for waiver here plaintiff argues that there was an unconstitutional taking of his property in violation of Arti-

---

4. In the complaint the only relief sought against HCA was an order of specific performance of the contract. That contract, as the Vice Chancellor noted in his February 8, 1973 opinion dismissing for want of equity juridiction, had long since expired by its terms and thus any basis for injunctive relief was moot. In addition, Donovan breached a condition of the contract because he did not maintain the dump so as to satisfy all legal requirements. Cf. 17A *C.J.S.* Contracts § 337.

5. The doctrine bars suits against the State, not against its agents who engage in tortious conduct. Thus :
 "The state without its consent is not liable for the torts of its agents, officers and employees even though they are acting in its service at the time the tort is committed . . . . In the absence of statute or constitutional provision there is grave doubt whether the state is liable either for the tortious destruction or appropriation of property . . . . " 2 Harper and James *supra* § 29.4.
 The alleged agents are not parties to this action.

cle I, Section 8 of the Constitution.[6] The provisions of that Section are a self-executing waiver of immunity on the part of the State when it applies. *State v. 0.24148 Acres*, Del.Supr., 171 A.2d 228 (1961). But Donovan is incorrect in saying that it is applicable here. We say this because he did not have a property interest in the HCA shells.

Donovan argues that "his clam shells" were taken by the State. Not so. Certainly there is no showing that the State took any shells that were in his dump, so the argument obviously is directed to shells at the HCA plant. And he had no property right in them while they were there. He had only a contract right to carry away and dispose of them.[7] Thus the contract was for personal services only and did not give Donovan a property right in the shells, prior to hauling, sufficient to invoke Section 8.[8]

We hold, therefore, that Donovan's claim against the State is barred by the doctrine of sovereign immunity.

## IV

Next, we consider the State's argument that the Trial Court did not have the power to impose costs on the Agencies because that is not permissible under the statute, and, in any event, sovereign immunity bars such assessment against the State.

We turn to 10 Del.C. § 5101, which provides in pertinent part as follows:

"... Generally a party for whom final judgment in any civil action, or on a writ of error upon a judgment is given in such action, shall recover, against the adverse party, costs of suit, to be awarded by the court."

This aspect of the dispute centers on the Trial Judge's authority to do what he did: did he have the power to charge costs to the prevailing Agencies? or, to put it another way, does the statute mandate the award of costs to the party to whom a judgment is given in a civil action at law?

The statute says that the party given a final judgment "generally" shall be awarded costs of suit. Does this mean in every case? We think not. "Generally" means "for the most part," *The Concise Oxford Dictionary* (5 Ed.), or "usually." Thus, in *Walsh v. Hotel Corporation of America*, Del.Supr., 231 A.2d 458 (1967), Chief Justice Wolcott said that costs are "usually" allowed to the prevailing party. Therefore, when the statute says that costs are "generally" given, this means something less than "always."

It follows, then, that there may be circumstances under which costs do not go to the party to whom a final judgment is awarded. Determining when costs are

---

6. Art. I, § 8 provides that no man's property "shall . . . be taken or applied to public use without the consent of his representatives, and without compensation being made."

7. The agreement with HCA stated:
 "It is agreed that Miller Donovan . . . will haul all shells . . . for a period of two years beginning October 30, 1968 and extending through October 29, 1970. Miller Donovan agrees to keep trucks available at all times at the HCA Food Corporation shall elevator . . . for the purpose of being loaded with shells. Miller Donovan also agrees that the shells hauled from the . . . plant . . . and dumped into Miller Donovan's disposal area will be so treated as to satisfy all legal

requirements of the State of Delaware Water and Air Resources Commission, the Delaware State Board of Health and all other public authorities.
 HCA Food Corporation agrees to pay Miller Donovan $0.0225 per bushel of shells for his services. . . . "

8. In addition, plaintiff's license to operate a dump was not "property" in any constitutional or other legal sense. It was merely a permit issued under the authority of the State in the exercise of its police power. Compare *Restaurants, Inc. v. City of Wilmington*, Del.Supr., 274 A.2d 137 (1971); *Greater Wilmington Transportation Auth. v. Kline*, Del.Super., 285 A.2d 819 (1971); *State v. 0.622 Acres of Land, More or Less*, Del.Super., 254 A.2d 57 (1969).

awarded and when they are not is, in our judgment, a matter of judicial discretion under the statute. That conclusion is consistent with Superior Court Civil Rule 54(d), which provides that " . . . costs shall be allowed as of course to the prevailing party unless the Court otherwise directs," and provides a measure of uniformity with 10 Del.C. § 5106 governing costs in the Court of Chancery.[9]

■ It follows from this analysis of the Statute that even though the State was given final judgment in the action, it is not necessarily entitled to recover its own costs. The award of such costs is discretionary and, in light of the Trial Court's proper condemnation of the manner in which the State Agencies "went about putting this man out of business for the State's own selfish purposes," there was no abuse of discretion in denying the State's recovery of its own costs.

■ There remains the question of whether the State Agencies may be charged with the costs of the unsuccessful plaintiff and of HCA. In *Peyton v. William C. Peyton Corporation*, Del.Supr., 23 Del.Ch. 365, 8 A.2d 89 (1939), this Court said that:

"Costs are allowances in the nature of incidental damages awarded by law to reimburse the prevailing party for ex-

penses necessarily incurred in the assertion of his rights in court. At the common law costs were unknown. The right to recover them depends on statutory authority express or implied."

That is the general rule. See 20 *Am.Jur.* 2d Costs §§ 1, 2, 4 and 10. Compare *White v. Metropolitan Merchandise Mart*, Del.Super., 107 A.2d 892 (1954).

■ ■ We find nothing in § 5101 which authorizes the assessment of costs of an unsuccessful party against a prevailing party. (But compare 10 Del.C. § 5106 which governs actions in the Court of Chancery.) It also appears that in any event the assessment of such costs is barred here by the doctrine of sovereign immunity. 20 *Am.Jur.*2d Costs § 32; Annot., Costs—Liability of State, 72 *A.L. R.*2d 1379, 1383.

It follows, therefore, that so much of the judgment of the Superior Court as charges the State Agencies with costs incurred by other parties must be reversed.

### V

■ Finally, we are aware that many other issues were briefed and argued by the parties and, while all were considered, they are not material in our view of the case.[10]

---

9. 10 Del.C. § 5106 provides:
"The Court of Chancery shall make such order concerning costs in every case as is agreeable to equity."

10. We take brief notice of two arguments made by plaintiff:
(1) He says that the evidence was not sufficient to support the order entered by WARC which was affirmed by the Superior Court. In our view, there is substantial evidence to support the order. There were numerous complaints by residents living in the vicinity of the dump, and investigations by the Board of Health and WARC clearly disclosed the presence of flies and odors sufficient to warrant a finding that plaintiff was maintaining a nuisance. Under settled law our Courts must sustain factual findings by an adminis-

trative agency which are supported by substantial evidence. *Searles v. Darling*, Del. Supr., 7 Terry 263, 83 A.2d 96 (1951); *State ex rel. Department of Labor v. Unemployment Insurance Appeal Board*, Del.Super., 297 A.2d 412 (1972).
(2) The WARC order of June 27, 1969 was entered without notice to him and without an opportunity to defend and thus violated his right to due process. It is undisputed that he did not have prior notice of that order and it does not appear that a hearing as such was held before the order issued. But a full hearing regarding the condition of the dump was held on September 16, 1968, at which time Donovan was present with counsel. Thereafter, permits for extensions of limited duration were issued, the last of which stated that it was valid "until June 20, 1969" and

\* \* \* \* \* \*

The order of the Superior Court directing the State to pay costs incurred by plaintiff and HCA is reversed. In all other respects the judgment is affirmed.

---

that any request to extend that date "must be submitted in writing prior to June 1, 1969." Donovan did not file such a request.

Under the circumstances it does not appear that there was any violation of procedural due process.