**Theophilus R. NIX, Esquire, Al O. Plant, Sr., Plaintiffs,**

**v.**

**H. Murray SAWYER, Jr., Esquire, Philip B. Beardsley, Esquire, Roger A. Akin, Esquire, James S. Bray, Janet C. Attix, Defendants.**

Superior Court of Delaware, New Castle County.

Submitted: April 26, 1983.

Decided: July 21, 1983.

Theophilus R. Nix, Wilmington, and Christopher A. Hart, Washington, D.C., (argued), District of Columbia, for plaintiffs.

Robert K. Payson (argued) and John E. James, of Potter, Anderson & Corroon, Wilmington, for defendants H. Murray Sawyer, Jr., Philip B. Beardsley and Roger A. Akin.

Wayne N. Elliott and Vernon R. Proctor (argued) of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for defendants James S. Bray and Janet C. Attix.

O'HARA, Judge.

The instant lawsuit filed by plaintiffs purportedly alleging defamation, malicious prosecution, abuse of process, and *prima facie* tort against defendants arose when the latter attempted to secure a temporary restraining order ("TRO") against plaintiffs in the Court of Chancery of this State. Specifically, defendants James S. Bray and Janet C. Attix, as representatives of the Delaware Adolescent Program, Inc.

("DAPI")[1] and defendants H. Murray Sawyer, Philip B. Beardsley, and Roger A. Akin, as legal counsel for DAPI, sought to enjoin plaintiffs from entering the premises of any DAPI facility without prior permission from its officials. This action was precipitated by an April 23, 1982 meeting convened by plaintiffs at the George Gray Elementary School and allegedly resulting in confusion and disruption of DAPI programs. When plaintiff, Al O. Plant, advised the Board of Directors of DAPI, and informed a local paper, that plaintiffs intended to conduct another meeting at Gray Elementary School on April 26, 1982, defendants sought the TRO. From plaintiffs' assertion that the TRO lawsuit had no basis in law or fact,[2] arose the causes of action advanced against defendants here.

■ Defendants challenge plaintiffs' claims herein by moving to dismiss for failure to state a claim pursuant to Superior Court Civil Rule 12(b)(6). In evaluating said motion, the Court must assume all well-pleaded facts in the complaint to be true. *Laventhol, Krekstein, Horwath & Horwath v. Tuckman,* Del.Supr., 372 A.2d 168 (1976). A complaint will not be dismissed unless plaintiffs would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. *Diamond State Tel. Co. v. University of Delaware,* Del.Supr., 269 A.2d 52 (1970).

The foundation of plaintiffs' defamation claim is the verified complaint and supporting sworn affidavits of defendants Bray and Attix in the action seeking the TRO,[3] namely, *Delaware Adolescent Program, Inc. v. Al O. Plant, et al.,* Del.Ch., C.A. No. 6784

(1982). Defendants counter by relying upon the absolute privilege which attaches to statements made in the course of judicial proceedings. This Court agrees with the defendants and, accordingly, grants the motion to dismiss the defamation count against all defendants.

■ The common law rule protecting statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings from a cause of action in defamation is well-recognized in this jurisdiction.[4] *Short v. News-Journal Company,* Del.Supr., 212 A.2d 718 (1965); *Klein v. Sunbeam Corp.,* Del.Supr., 94 A.2d 385 (1952); *Tatro v. Esham,* Del.Super., 335 A.2d 623 (1975). The privilege affords absolute protection upon a showing that: 1) statements issued as part of a judicial proceeding; 2) the alleged defamation is relevant to a matter at issue in the case.

■ The first requirement is easily satisfied inasmuch as the subject complaint and affidavits were filed in Chancery Court pursuant to Rule 65(b) and thus initiated a judicial proceeding, a term which embraces any hearing before a tribunal performing a judicial function. W. Prosser, *The Law of Torts,* § 114 at 779 (4th ed. 1971). The privilege is not narrowly confined to intracourtroom events, but extends to all communications appurtenant thereto such as "conversations between witnesses and counsel, the drafting of pleadings, and the taking of depositions or affidavits *ex parte.*" *Tatro v. Esham,* supra. See also *Ginsburg v. Black,* 7th Cir., 192 F.2d 823 (1951), *cert. den.,* 343 U.S. 934, 72 S.Ct. 770, 96 L.Ed. 1342 (1952); *Brown v. Shimabukuro,* D.C.

---

1. DAPI is a non-profit organization funded both publicly and privately providing educational and counselling services to pregnant teenagers.

2. In this regard, plaintiffs allege violations of Superior Court Civil Rule 11 and Disciplinary Rules 2–109(A)(2), 2–110(C)(1)(a), and 7–102(A)(2) of the ABA Code of Professional Responsibility which has been adopted in this State.

3. Plaintiffs allege that the statements made therein are libelous per se in that they cast an unfavorable light on Theophilus R. Nix and Al O. Plant, Sr. in their respective capacities of attorney and State Representative.

4. Specifically applying the privilege to attorneys, see *Craig v. Burris,* Del.Super., 55 A. 353 (1902); *McLaughlin v. Copeland,* D.Del., 455 F.Supp. 749 (1978); *Read v. Baker,* D.Del., 430 F.Supp. 472 (1977); See also *Restatement (Second) of Torts,* § 586 (1977).

Cir., 118 F.2d 17 (1941); *Sacks v. Stecker,* 2nd Cir., 60 F.2d 73 (1932).

■ As for the relevancy requirement, defendants have again met their burden. "Relevance" in this sense is not a legal term of art, but merely a showing that the utterance in question is reasonably germane to the pending action. *See generally* Annot. 23 A.L.R.3d 1172 (1969). Moreover, this requirement is liberally construed in favor of the pleader. *Ginsburg v. Black,* supra. The statements at issue in the case at bar documented plaintiffs' alleged conduct on April 23, 1982, conduct which defendants hoped to subsequently enjoin. The allegations of which plaintiffs complain were not merely collateral to defendants' cause of action but, in fact, formed the basis of their claim for relief.

Recognizing that statements offered in the context of litigation enjoy immunity from liability for defamation, plaintiffs urge this Court to adopt an exception in cases where the lawsuit advanced is proven to be a sham. Citing *Cooper v. Armour,*[5] C.C.N.D., N.Y., 42 F. 215 (1890), plaintiffs assert that sound judicial policy favors adoption of such an exception, in light of the compelling interest in avoiding universally crowded and ever-expanding court dockets.

While this Court acknowledges the merit of plaintiffs' argument in this regard, it likewise recognizes that the policy supporting the judicial privilege has been accepted and embraced uniformly by state and federal courts. Moreover, the interest in encouraging a litigant's unqualified candor as it facilitates the search for truth is deemed so compelling that the privilege attaches even where the statements are offered maliciously or with knowledge of their falsity. See *Adams v. Peck,* Md.App., 288 Md. 1, 415 A.2d 292 (1980); *Vieira v. Meredith,* R.I. Supr., 84 R.I. 299, 123 A.2d 743 (1956).

■ Therefore, any litigant seeking application of a "sham litigation" exception would have to present an exceedingly strong factual showing in order to defeat operation of the privilege. Inasmuch as the plaintiffs' burden in this respect is analogous to the requisite showing for a claim of malicious prosecution, which the Court finds hereinbelow has not been met, the Court likewise concludes that the facts of the instant case do not compel a finding that the TRO lawsuit was a sham. Therefore, the absolute privilege attending defendants' statements herein shields them from liability on the defamation count.

The same factual allegations underlying the defamation argument are also advanced by plaintiffs to support claims of malicious prosecution, abuse of process, and *prima facie* tort against defendants. Essentially, plaintiffs assert that the TRO lawsuit was unfounded, calculated to intimidate and harass, and that they have sustained injury as the result thereof.

■ With respect to the cause of action for malicious prosecution, such a claim is viewed with disfavor by the Delaware courts, and, therefore, assessed with careful scrutiny. *Kaye v. Pantone, Inc.,* Del.Ch., 395 A.2d 369 (1978). Five requisites must coexist in order to render such an action viable: 1) the institution of civil proceedings; 2) without probable cause; 3) with malice; 4) termination of the proceedings in the aggrieved party's favor; and 5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury.

Plaintiffs' claim herein for malicious prosecution falls far short of the standard enunciated in *Kaye v. Pantone, Inc.,* supra, particularly in regard to the second, third and fourth requirements enumerated therein, i.e., probable cause, malice, and a result in the aggrieved party's favor. On the latter score, the underlying Chancery Court action has not been terminated in plaintiffs'

---

**5.** The *Cooper* case was an action for malicious prosecution which acknowledged the unqualified privilege attending defamatory statements uttered in legal proceedings. The proposition for which plaintiffs cite the decision is, at best, only implied.

favor. The Chancellor retained jurisdiction over the matter and has declined to dismiss or otherwise conclude the case. Although the Chancellor did not grant the TRO requested on DAPI's behalf, he also noted that plaintiffs would have to obtain the permission of DAPI officials prior to calling any future meetings at the facilities, thereby enjoining, in effect, any future unauthorized visits. This latter action by the Chancellor negates plaintiffs' suggestion that the TRO application was devoid of probable cause.

As for the necessary existence of malice in fact, plaintiffs have not even aspired toward such a showing. The bare allegation that defendants instituted these proceedings solely to intimidate and harass is insufficient. On this point, the Court in *Kaye v. Pantone, Inc.,* supra, stated:

> [T]here is authority that if his purpose was otherwise a proper one the addition of the incidental fact that he felt indignation or resentment toward the plaintiff, will not make him liable.

In sum, plaintiffs have failed to persuade this Court that malice was even an ancillary motive of defendants in seeking the TRO. Moreover, having determined the existence of probable cause for defendants' application in Chancery, the claim of malicious prosecution against defendants must fail, alleged malice notwithstanding. Therefore, defendants' motion to dismiss on this count must likewise be dismissed.

■ The next cause of action proffered by plaintiffs concerns an alleged abuse of process in filing for the TRO; again, defendants have moved this Court to dismiss the claim. The parameters of this tort were considered in *Unit, Inc. v. Kentucky Fried Chicken Corporation,* Del.Super., 304 A.2d 320 (1973):

> In regard to the claim for abuse of process, Prosser states that the essential elements of the tort are: 1) an ulterior purpose; and 2) a wilful act in the use of the process not proper in the regular conduct of the proceedings. In explaining these elements, Prosser notes that some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required. Merely carrying out the process to its authorized conclusion, even though with bad intentions, does not result in liability. Some form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, must be shown. Prosser, *Law of Torts,* § 121 (4th Ed.1971).

Plaintiffs' allegations under this claim, even if undisputed, fail to conform substantively to the above cited definition of abuse of process. Specifically, plaintiffs are content to rely on the assertion that defendants' purpose in pursuing a TRO was to impede "active and healthy community scrutiny of a community service project," and reiterate their position that the lawsuit had no basis in fact or law; the Court has already addressed the substance of these arguments in evaluating the claim for malicious prosecution. On the issue of abuse of process, the Court notes plaintiffs' failure to allege 1) a wilful and improper act in the use of process; 2) any form of coercion; and 3) a collateral advantage to defendants arising from said coercion, and, accordingly, must also dismiss this cause of action against defendants herein.

■ Plaintiffs' complaint likewise fails to sustain a claim based on *prima facie* tort. This cause of action was acknowledged in *Kaye v. Pantone, Inc.,* supra, and has been defined as the intentional infliction of harm, absent excuse or justification, resulting in damage by an act or series of acts which would otherwise be lawful and which do not fall within the categories of traditional tort.

■ However, the existence of justification for the act complained of, in the instant case initiating a lawsuit, defeats any cause of action labeled a *prima facie* tort. Having already upheld defendants' conduct in pursuing a TRO against claims of abuse of process and malicious prosecution, the Court similarly concludes that defendants' actions were sufficiently justified. In addi-

tion, the Court observes a seeming inconsistency in plaintiffs' assertion that these acts fail to conform to the traditional categories of tort, insofar as the identical conduct at issue herein has also been labeled defamation, abuse of process and malicious prosecution.

■ Finally, plaintiffs charge defendant attorneys with "conspiratorial negligence"[6] in drafting the pleadings and affidavits in question by incorporating defamatory matter in those documents. However, once judicial privilege attaches to the defamatory statements in issue, an attorney will not be deemed negligent or otherwise culpable for the use thereof. See, *Restatement (Second) of Torts* § 586 (1977); 50 Am.Jur.2d *Libel and Slander* § 246 (1970); 53 C.J.S. *Libel and Slander* § 104 (1948).

In *Thornton v. Rhoden,* Cal.App., 245 Cal. App.2d 80, 53 Cal.Rptr. 706 (1966), a defamation action against an attorney and client wherein the utterances in issue were held to be protected by absolute judicial privilege, the Court further decided that the claim of abuse of process, as raised specifically against the attorney, was logically inconsistent with conduct that comported with the privilege, stating:

We have held these facts to be absolutely privileged in a defamation action.

The salutary purpose of the privilege should not be frustrated by putting a new label on the complaint. If it is desirable to create an absolute privilege in defamation, not because we desire to protect the shady practitioner, but because we do not want the honest one to have to be concerned with libel or slander actions while acting for his client, we should not remove one concern and saddle him with another for doing precisely the same thing.

■ This Court concludes that the same cogent argument inheres with respect to plaintiffs' assertion of negligence against defendant attorneys herein, and, therefore, would also dismiss that cause of action.[7]

In summary, the defendants' motion to dismiss, which has been rendered a motion for summary judgment pursuant to Superior Court Civil Rule 56 by the introduction of supporting affidavits,[8] must be granted with respect to the counts alleging defamation, malicious prosecution, abuse of process, *prima facie* tort and negligence.

IT IS SO ORDERED.

---

**6.** This cause of action is advanced in Paragraph 10 of the complaint as follows:

Plaintiff alleges that for the defendant lawyers to make the allegations in their Complaint without the slightest assurance that their burden of proof could be met when these lawyers knew or should have known that they had no hard supportable facts, and no immediate and irreparable harm could be proved, that their allegations were only rumor and gossip to support the charges, constitutes the essence of bad faith and conspiratorial negligence.

**7.** Defendants also cite ample authority for the proposition that attorneys owe no duty to third parties who are *not* their clients. See, e.g., *Chalpin v. Brennan,* Ariz.App., 114 Ariz. 124, 559 P.2d 680 (1976); *Chicago Title Ins. Co. v. Holt,* N.C.App., 36 N.C.App. 284, 244 S.E.2d 177 (1978); *Metzker v. Slocum,* Or.Supr., 272 Or. 313, 537 P.2d 74 (1975); *Annot.* 45 A.L.R.3d 1181 (1972).

**8.** See *Brown v. Colonial Chevrolet Company,* Del.Super., 249 A.2d 439 (1968). In this regard, the Court notes that plaintiffs failed to introduce any affidavits controverting those introduced by defendants, but rather relied on the unverified pleadings in the complaint as well as the allegations and arguments of counsel. Rule 56(e) of the Superior Court Civil Rules, however, states that a party opposing a motion for summary judgment cannot demonstrate the existence of a genuine issue of material fact by merely relying on unverified pleadings and allegations when the moving party has established a record through the use of affidavits as the basis for his request for summary judgment. Moreover, if the non-moving party does not controvert the movant's affidavits or other record evidence with an affidavit of his own, the motion for summary judgment should be granted. See *Moore v. Sizemore,* Del.Supr., 405 A.2d 679 (1979); *Hurtt v. Goleburn,* Del.Supr., 330 A.2d 134 (1974); *Palivoda v. Bruette,* Del. Super., 250 A.2d 808 (1969).