# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

RUTH ADAMS, SHARON RIDDICK,　　)
and ALAN ROSENTHAL,　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)　C.A. No. N15C-06-030 MMJ
ANDREW J. GELMAN, D.O., and　　　　)　CCLD
ANDREW J. GELMAN, D.O., P.A.,　　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)

Submitted: November 12, 2015
Decided: January 28, 2016

Upon Defendants' Motion to Dismiss
**GRANTED**

## OPINION

John S. Spadaro, Esq. (Argued), John Sheehan Spadaro, LLC, Attorney for Plaintiffs

John D. Balaguer, Esq. (Argued), and Lindsey E. Anderson, Esq., White and Williams, LLP, Attorneys for Andrew J. Gelman, D.O.

Colin M. Shalk, Esq. (Argued), and Rachel D. Allen, Esq., Casarino Christman Shalk Ransom & Doss, P.A., Attorneys for Defendant Andrew J. Gelman, D.O., P.A.

**JOHNSTON, J.**

## PROCEDURAL AND FACTUAL CONTEXT

On May 17, 2013, Dr. Gelman conducted an Independent Medical Exam ("IME") on Plaintiff Sharon Riddick ("Riddick"). Dr. Gelman prepared a report in connection with injuries Riddick sustained in an August 2012 auto collision.

Plaintiff Alan Rosenthal ("Rosenthal") sustained a work-related injury in January 2013. The worker's compensation insurance carrier sent Rosenthal for Defense Medical Examinations ("DME") with Dr. Gelman in May 2013 and October 2013. Dr. Gelman testified before the Industrial Accident Board ("IAB") regarding the DMEs.

In April 2014, Dr. Gelman reviewed Plaintiff Ruth Adams' ("Adams") medical records in connection with injuries she sustained in a July 2012 auto collision.

On June 2, 2015, Adams, Riddick, and Rosenthal (collectively "Plaintiffs") commenced this action against Dr. Gelman and his medical practice (collectively "Defendants"). Plaintiffs contend that each has been victimized by Dr. Gelman's systematic and unethical behavior. Plaintiffs have asserted 14 Counts in the Complaint, as follows:

| Count | Alleged | Parties |
|---|---|---|
| I, II, III | Common Law Fraud | All Plaintiffs |
| IV, V | Constructive/Equitable Fraud | Riddick, Rosenthal |
| VI, VII | Breach of Fiduciary Duty | Riddick, Rosenthal |
| VIII, IX, X | Statutory Consumer Fraud | All Plaintiffs |
| XI, XII | Battery | Riddick, Rosenthal |

| XIII | Racketeering | All Plaintiffs |
|------|--------------|----------------|
| XIV | Civil Conspiracy | All Plaintiffs |

On August 6, 2015, Defendants filed a Motion to Dismiss. Plaintiffs filed an Answer to Defendants' Motion to Dismiss on September 4, 2015, and Defendants filed a Response on September 24, 2015.

## STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[1] The Court must accept as true all non-conclusory, well-pleaded allegations.[2] Every reasonable factual inference will be drawn in favor of the non-moving party.[3] If the claimant may recover under that standard of review, the Court must deny the motion to dismiss.[4] Dismissal is granted only when "under no reasonable interpretation of the facts alleged could the complaint state a claim for which relief might be granted."[5]

## ANALYSIS

### *Defendants' Contentions*

Defendants argue that Dr. Gelman enjoys absolute immunity for his medical examinations and reports, and for his testimony before the IAB. Additionally,

---

[1] *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978).
[2] *Id.*
[3] *Wilmington Sav. Fund. Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).
[4] *Spence*, 396 A.2d at 968.
[5] *Thompson v. Medimmune, Inc.*, 2009 WL 1482237, at *4 (Del. Super.).

Defendants assert that fraud is not an exception to absolute immunity, and that absolute immunity applies to claims other than defamation.

Defendants also argue that Plaintiffs have failed to state a claim for common law fraud. Defendants assert that Plaintiffs have not alleged that Dr. Gelman made any representation to them. Defendants also assert that Plaintiffs cannot demonstrate justifiable reliance on any statement made by Dr. Gelman. Further, Defendants assert that the allegations in the Complaint do not meet the specificity requirements of Superior Court Civil Rule 9(b).

As an IME/DME does not establish a fiduciary relationship, Defendants argue that Plaintiffs' claims for breach of fiduciary duty, and for constructive or equitable fraud, fail. Specifically, Defendants assert that Dr. Gelman had no physician-patient relationship with Plaintiffs.

Defendants also argue that Plaintiffs have failed to state a claim for statutory consumer fraud as the alleged misrepresentation did not occur in connection with a sale.

Defendants argue that Plaintiffs' claims for battery fail because they were not filed within the statute of limitations, and because Plaintiffs failed to state a claim upon which relief may be granted.

Lastly, Defendants argue that Plaintiffs have failed to state a claim for conspiracy.

4

## *Absolute Immunity*

Absolute immunity is a common law rule that "protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to a matter at issue in the case."[6]

To determine whether absolute immunity applies,

> the Court must address the first prerequisite for claiming the absolute privilege-whether the allegedly defamatory statements in this case were made during the course of a judicial proceeding, and thus arose in a privileged context. If the occasion on which the statements were made is privileged, the Court must then determine whether the contents of the statements were pertinent to this action.[7]

An in-court judicial proceeding is not necessary for absolute immunity to apply. In *Hoover v. Van Stone*,[8] the plaintiff made communications to a limited and discrete group of defendant's customers for the purpose of obtaining evidence for trial. The Court found that "statements made during depositions, conferences between witnesses and counsel, and settlement negotiations, when pertinent to underlying suit, have been protected by the absolute privilege."[9] The Court explained that if communications between a plaintiff and potential witnesses were

---

[6] *Barker v. Huang*, 610 A.2d 1341, 1345 (Del. 1992).
[7] *Hoover v. Van Stone*, 540 F. Supp 1118, 1122 (D. Del. 1982).
[8] 540 F. Supp 1118 (D. Del. 1982).
[9] *Id*. at 1122.

5

not privileged, it is unlikely that a plaintiff would be able to engage in effective investigation necessary to prepare for litigation.[10]

In *Briscoe v. LaHue*,[11] the United States Supreme Court found that the "immunity analysis rests on functional categories, not on the status of the defendant."[12] When testifying, a witness "is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury."[13]

As for the second prerequisite, "merely showing that the utterance in question is reasonably germane to the pending action"[14] is sufficient.

This Court also must consider public policy. In *Barker v. Huang*,[15] this Court recognized a line of cases holding that "[t]he purpose served by the absolute privilege is to facilitate the flow of communication between persons involved in judicial proceedings and, thus, to aid in the complete and full disclose of facts necessary to a fair adjudication."[16] As long as a statement is made in the course of, and pertinent to, a judicial proceeding, "a showing of malice will not divest the statement of its immune status."[17] If a statement is offered in "sham litigation," a

---

[10] *Id*. at 1123.
[11] 460 U.S. 325 (1983).
[12] *Id*. at 342.
[13] *Id*.
[14] *Nix v. Sawyer*, 466 A.2d 407, 411 (Del. Super. 1983).
[15] 610 A.2d 1341 (Del. 1992).
[16] *Id*. at 1345.
[17] *Id*. (quoting *Hoover*, 540 F. Supp at 1122).

party would have to "present an exceedingly strong factual showing in order to defeat operation of the privilege."[18]

Defendants rely on *Hoover*, *Briscoe*, and *Nix* to support their position that Dr. Gelman enjoys absolute immunity for his medical examinations and reports. Defendants argue it is customary for parties to retain experts before litigation is commenced in order to investigate matters, to assess viability before committing to litigation, and to assess matters for settlement. If not immune, Defendants argue that the potential threat of subsequent litigation could color the expert's testimony.

Defendants also rely on *Barker*, and argue that Dr. Gelman's testimony regarding Rosenthal's two DMEs, heard during a judicial proceeding, is protected by absolute immunity.

Plaintiffs submit that Dr. Gelman's medical examinations and reports occurred during the ordinary course of insurance claims handling, and not during a formal judicial proceeding. A formal judicial proceeding is not necessary for absolute immunity to apply.[19] All that is required is for the medical examinations and reports to be reasonably germane to a pending action.[20] Plaintiffs have not argued that the reports are not "germane" to a prospective or pending judicial proceeding. Nor have Plaintiffs alleged that this is "sham litigation."

---

[18] *Nix*, 466 A.2d at 411.
[19] *Hoover*, 540 F. Supp 1118 (D .Del. 1982).
[20] *See Nix*, 466 A.2d at 411.

7

Dr. Gelman's testimony regarding Rosenthal's two DMEs to the IAB occurred during a formal judicial proceeding. Therefore, that the testimony was reasonably germane to the pending action.

Delaware courts have not limited absolute immunity strictly to defamation claims. Instead, absolute immunity is limited to claims that involve injury to reputation.

> Defendants argue that even if the absolute privilege bars an action for defamation, it does not preclude the prosecution of the three other counts contained in the counterclaim. These counts, however, are all predicated on the very same acts providing the basis for the defamation claim. Application of the absolute privilege solely to the defamation count, accordingly, would be an empty gesture indeed, if, because of artful pleading, the plaintiff could still be forced to defend itself against the same conduct regarded as defamatory. Maintenance of these kindred causes of action, moreover, would equally restrain the ability of judges, parties, counsel and witnesses to speak and write freely during the course of judicial proceedings[21]

The Court finds that Dr. Gelman has absolute immunity for his pre-litigation medical examinations and reports, and for his testimony regarding Rosenthal's two DMEs to the IAB. The Court also finds that absolute immunity applies to claims other than defamation.[22]

---

[21] *Hoover*, 540 F. Supp at 1124.
[22] *Id*.

## *Common Law Fraud*

Delaware Civil Rule 9(b) states: "In all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally."[23] The purpose of Rule 9(b) is to ensure "that a defendant is put on sufficient notice so that it may defend itself against a plaintiff's allegations."[24] To satisfy Rule 9(b), common law fraud requires:

> 1) a false representation, usually of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or to refrain from acting; 4) the plaintiff's action or inaction was taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.[25]

In the Complaint, Plaintiffs allege that Dr. Gelman held himself out and "represented (at least by implication)" that he was a fair and unbiased medical examiner. In *Browne v. Robb*,[26] the plaintiff retained the defendant attorney after the attorney allegedly stated that he would provide skillful and diligent representation. The Court found that plaintiff's complaint "lacks even a single particular or specific fact to support his fraud claim. Even assuming such a

---

[23] Super. Ct. Civ. R. 9(b).
[24] *WP Devon Assocs., L.P. v. Hartstrings, LLC*, 2012 WL 306513, at *4 (Del. Super.).
[25] *Crowhorn v. Nationwide Mut. Ins. Co.*, 2001 WL 695542, at *5 (Del. Super.) (quoting *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 ( Del. 1983)).
[26] 583 A.2d 949 (Del. 1990).

9

statement was made under the circumstances described, it was a mere expression of opinion, which is not actionable."[27]

Plaintiffs have failed to allege with specificity a false representation made by Dr. Gelman. Without this specificity, Plaintiffs have failed to provide Dr. Gelman with sufficient notice to defend himself against their allegations, as required to survive Rule 9(b) dismissal. The Court finds that unilateral perceptions of implied representations simply are not sufficient to support allegations of fraud.

The Court also finds no reason for Dr. Gelman to have to disclose his bias, if any, to Plaintiffs. A "physician selected by the defendant to examine plaintiff is not necessarily a disinterested, impartial medical expert, indifferent to the conflicting interests of the parties."[28] Under Delaware law, "[t]here is normally no duty to speak absent a fiduciary or contractual relationship."[29]

Plaintiffs have failed to state a specific allegation of any agreement between Dr. Gelman, State Farm/Amazon.com, Inc., and Defendants' counsel to achieve particular results. The undisputed evidence shows that Adams and Riddick were aware that Dr. Gelman was retained by State Farm, and that Rosenthal was aware that Dr. Gelman was retained by Amazon.com, Inc. The question of Dr. Gelman's alleged bias, if any, should be addressed in the proper forum, through cross-examination.

---

[27] *Id.* at 955-56.
[28] *Jakubowski v. Lengen*, 86 A.D.2d 398, 450 N.Y.S.2d 612, 624 (N.Y.App.Div. 1982).
[29] *S&R Associates, L.P. v. Shell Oil Co.*, 725 A.2d 431, 440 (Del. Super. 1998).

## *Breach of Fiduciary Duty*

The physician-patient privilege is a statutory right that did not exist at common law.[30] Pursuant to Delaware Uniform Rule of Evidence 503,[31] certain communications between a patient and physician are protected. The majority of states have concluded that an IME/DME performed, at the request of a third party, does not give rise to a physician-patient relationship.[32] In *Smith v. Radecki*,[33] the Court found:

> Physicians conducting IMEs at the behest of third parties assume a fundamentally different role from a diagnosing or treating physician; typically, a physician conducting an IME is not selected by the examinee, is not hired by the examinee, does not report to the examinee, and does not provide treatment to the examinee.[34]

In *Phillips v. Pris-MM, LLC*,[35] this Court held that an IME/DME physician does not establish a physician-patient privilege with the examinee. The purpose of an IME/DME is "to further the litigation process."[36] The Court found that during an IME/DME, the plaintiff "is compelled to submit to questioning and a physical

---

[30] *State v. Onumonu*, 2001 WL 695539, at *4 (Del. Super.).
[31] D.R.E. 503
[32] *Smith v. Radecki*, 238 P.3d 111, 115 (Alaska 2010); *Dyer v. Trachtman*, 679 N.W.2d 311, 315 (Mich. 2004); *Hafner v. Beck*, 916 P.2d 1105, 1107-1108 (Ariz. Ct. App. 1995); *Martinex v. Lewis*, 969 P.2d 213, 219-20 (Colo. 1998); *Peace v. Weisman*, 368 S.E.2d 319, 320-21 (Ga. App. 1988); *Henkemeyer v. Boxall*, 465 N.W.2d 437, 439 (Minn. App. 1991); *Ervin v. Am. Guardian Life Assurance Co.*, 545 A.2d 354, 357 (Pa. Super. Ct. 1988); *LoDico v. Caputi*, 129 A.D.2d 361, 364 (N.Y. App. Div. 1987).
[33] 238 P.3d 111 (Alaska 2010).
[34] *Id*. at 115.
[35] 2009 WL 3022117 (Del. Super.).
[36] *Id*. at *3 (quoting *Jacobs v. Chaplin,* 693 N.E.2d 1010, 1013 (Ind.1994).

11

examination by a physician not only not of plaintiff's choosing, but a physician hired by the party *adverse* to plaintiff in litigation."[37]

The Delaware Supreme Court has explained that "the concept of a fiduciary relationship, which derives from the law of trusts, is more aptly applied in legal relationships where the interests of the fiduciary and the beneficiary incline toward a common goal and in which the fiduciary is **required** to pursue solely the interests of the beneficiary in the property."[38] "A fiduciary relationship is a situation where one person reposes special trust in and reliance on the judgment of another or where a special duty exists on the part of one person to protect the interests of another."[39] In addition to fiduciaries such as express trustees, corporate officers and directors, fiduciary relationships exists between general partners, administrators, executors, or guardians; and, in some instances, joint venturers or principals and their agents.[40]

Riddick and Rosenthal have not pled the existence of a fiduciary relationship between them and Dr. Gelman. Riddick and Rosenthal have not alleged circumstances that support a reasonable inference that they were dependent on Dr. Gelman, such that he would be charged with protecting their interests. In fact, Riddick and Rosenthal submit that State Farm and Amazon.com, Inc. retained Dr.

---

[37] *Phillips v. Pris-MM, LLC*, 2009 WL 3022117, at *3 (Del. Super.) (emphasis on original).
[38] *Crosse v. BCBSD, Inc.*, 831A.2d 492, 495 (Del. 2003) (quoting *Corrado Bros. v. Twin City Fires Ins. Co.*, 562 A.2d 1188, 1193) (Del. 1989) (emphasis added).
[39] *McMahon v. New Castle Assoc.*, 532 A.2d 601, 604 (Del. Ch. 1987) (quoting *Cheese Shop Int'l, Inc. v. Steele*, 303 A.2d 689 (Del. Ch. 1973), *rev'd on other grounds*, 311 A.2d 870 (Del. 1973)).
[40] *Id*.

12

Gelman. As a result, Dr. Gelman's interests were not perfectly aligned with Riddick and Rosenthal. The Court finds that Riddick and Rosenthal have failed to state claims for breach of fiduciary duty.

### *Constructive or Equitable Fraud*

In the Complaint, Riddick and Rosenthal seek compensatory and punitive damages against Dr. Gelman for constructive or equitable fraud. In order to recover, they must allege sufficient facts to demonstrate a fiduciary relationship with Dr. Gelman.

A fiduciary relationship will arise "where the relationship or trust can be characterized as 'special.'"[41] The Court has found that there was no fiduciary relationship between Dr. Gelman and either Riddick or Rosenthal. Therefore, Riddick and Rosenthal have failed to state claims for constructive or equitable fraud.

### *Statutory Consumer Fraud*

Plaintiffs allege that Dr. Gelman violated 6 *Del. C.* § 2513, the Consumer Fraud Act. Section 2513 provides:

> The act, use or employment by any person of any deception fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any

---

[41] *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1058 (Del. Super. 2001)

merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.[42]

The purpose of Section 2513 is to protect "consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part of wholly within this State."[43] The General Assembly has defined "Merchandise" to mean "any objects, wares, good, commodities, intangibles, real estate or services."[44] "Advertisement" is defined as "the attempt by publication, dissemination, solicitation or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in, any merchandise."[45] "Sale" is defined as "any sale, offer for sale or attempt to sell any merchandise for any consideration."[46]

In order to recover, Plaintiffs must prove that Dr. Gelman "intentionally concealed material facts with the intent that others would rely upon such concealment."[47] There is no allegation that Dr. Gelman contacted any Plaintiff for the purpose of selling, leasing or advertising any merchandise or services. Therefore, Plaintiffs have failed to state a claim for statutory consumer fraud.

---

[42] 6 *Del. C.* § 2513(a).
[43] 6 *Del. C.* § 2512.
[44] 6 *Del. C.* § 2511(6).
[45] 6 *Del. C.* § 2511(1).
[46] 6 *Del. C.* § 2511(8).
[47] *S&R Associates, L.P. v. Shell Oil Co.*, 725 A.2d 431, 440 (Del. Super. 1998).

14

### *Battery*

"[B]attery is the intentional, unpermitted contact upon the person of another which is harmful or offensive."[48]   The defendant must have the "intent to make contact with the person, not the intent to cause harm."[49]   Once the intent is determined, an objective reasonableness standard is then utilized to determine if the contact is harmful or offensive.[50]

In Delaware, a plaintiff must assert the claim within two years "from the date upon which it is claimed that such alleged injuries were sustained…."[51]   Riddick and Rosenthal allege that Dr. Gelman committed battery on their persons during their IMEs/DMEs.  According to the Complaint, Riddick was examined in May 2013, and Rosenthal was examined in May 2013 and again in October 2013. To comply with the statute of limitations, battery claims arising from the May 2013 examination must have been filed by May 2015.  The Complaint was not filed until June 2, 2015.  The Court finds that Plaintiffs' battery claims arising from their May 2013 medical examinations are barred.

Defendants argue that the battery claim arising from October 2013 must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  Defendants contend that Riddick and Rosenthal are unable to

---

[48] *Brzoska v. Olson*, 668 A.2d 1355, 1360 (Del. 1995).
[49] *Id.*
[50] *Id.*
[51] 10 *Del. C.* § 8119.

make a *prima facie* showing for battery because Riddick and Rosenthal consented to the contact, and the contact was not offensive.

> In order for a contact be offensive to a reasonable sense of personal dignity, it must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity. It must, therefore, be a contact which is unwarranted by the social usages prevalent at the time and place at which it is inflicted.[52]

In *Brzoska v. Olson*,[53] this Court considered whether a patient may recover damages against a doctor diagnosed with AIDS, absent a showing of a resultant physical injury or exposure to the disease. Ordinarily, consent is not waived "when the patient is touched in exactly the way he or she consented."[54] However, a "physician may be held liable for battery when he or she obtains the consent of the patient to perform one procedure and the physician instead performs a substantially different procedure for which consent was not obtained." [55]

Riddick and Rosenthal do not allege that they did not grant Dr. Gelman consent to conduct a medical examination. Riddick and Rosenthal do not allege that Dr. Gelman performed a substantially different procedure. Therefore, the Court finds that Riddick and Rosenthal have failed to state a battery claim upon which relief may be granted.

---

[52] Restatement (Second) of Torts § 19 cmt. A (1965).
[53] 668 A.2d 1355, 1360 (Del. 1995).
[54] *Id*. at 1366.
[55] *Id*.

## *Racketeering*

The parties have agreed that Plaintiffs claim for racketeering will not be pursued.

## *Civil Conspiracy*

Civil conspiracy requires "the combination of two or more persons for an unlawful purpose or for the accomplishment of a lawful purpose by unlawful means, which conspiracy results in damages."[56]  In the Complaint, Plaintiffs allege that Dr. Gelman has acted in concert with State Farm and with Amazon.com, Inc., to unreasonably delay and deny fair or timely payment of insurance benefits to Plaintiffs.

In Delaware, civil conspiracy is not an independent cause of action.  It "requires an underlying wrong which would be actionable absent the conspiracy."[57]  Having found that Plaintiffs have failed to state any substantive claim upon which relief may be granted, Plaintiffs' conspiracy claims also must be dismissed.

## **CONCLUSION**

Viewing the facts in the light most favorable to Plaintiffs, the Court grants Defendants' Motion to Dismiss.

---

[56] *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 694 (Del. Super. 1986).
[57] *Id*.

Dr. Gelman has absolute immunity for his medical examinations and reports, and for his testimony before the IAB. Having failed to allege with specificity any false representation made by Dr. Gelman to Plaintiffs, Plaintiffs' fraud claim must be dismissed. Plaintiffs' claims for breach of fiduciary duty, and for constructive or equitable fraud, must be dismissed due to Plaintiffs' inability to adequately plead the existence of a physician-patient or other fiduciary relationship between them and Dr. Gelman. Plaintiffs' claim for statutory consumer fraud must be dismissed because there is no allegation suggesting that Dr. Gelman sold, leased or advertised any merchandise or services to Plaintiffs. Riddick and Rosenthal's battery claims are dismissed because they did not file their claims within the applicable statute of limitations, and because Riddick and Rosenthal have failed to state a claim upon which relief may be granted. Because Plaintiffs' underlying claims have failed, their conspiracy claims must be dismissed.

**THEREFORE**, Defendant's Motion to Dismiss is hereby **GRANTED**.

**IT IS SO ORDERED.**

/s/___*Mary M. Johnston*_____
The Honorable Mary M. Johnston

18