### 20531

George R. GREEN, Respondent, v. John ZIMMERMAN and R. L. McNeil, Appellants.

(238 S. E. (2d) 323)

*Gressette and Gressette* of St. Matthews, and *J. C. Nicholson, Jr.,* of Orangeburg, *for Appellants.*

*Williams and Williams,* of Orangeburg, *for Respondent.*

October 19, 1977.

LEWIS, Chief Justice.

Plaintiff-respondent, the owner of an 8½ acre fish pond in Calhoun County, recovered judgment in the amount of $3,800.00 against the defendant-appellant, R. L. McNeil, operator of an airplane crop spraying service, for a fish kill in 1973 in respondent's pond, allegedly caused by the pollution of the water with chemicals sprayed from appellant's plane while engaged in spraying crops in adjacent fields. This appeal is from the denial of appellant's timely motion for a nonsuit, directed verdict; and for judgment notwithstanding the verdict or, in the alternative, for a new trial.

This action was brought, under the strict liability provisions of Section 55-3-60 of the 1976 Code of Laws, which provides in pertinent part that:

The owner of every aircraft which is operated over the land or waters of this State is absolutely liable for injuries to person or property on the land or water beneath caused by ascent, descent or flight of the aircraft or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured or of the owner or bailee of the property injured . . . An aeronaut who is

not the owner or lessee shall be liable only for the consequence of his own negligence.

While there are other questions raised, the basic ones concern the applicability of the foregoing statute to the aerial application of insecticides and pesticides to crops. Appellant argues, first, that the language of the statute and the absence of aerial application of chemicals in 1929, when it was enacted, sustain his contention that the General Assembly did not intend for the statute to apply to the operation of aircraft in dusting and spraying crops.

Appellant argues that the statutory language ("dropping or falling of any object therefrom") does not contemplate the intentional and controlled application of chemicals from an aircraft, but was intended to apply to the accidental falling or dropping of objects therefrom. We find no basis for such construction.

The statute applies to injuries "caused by ascent, descent or flight of the aircraft or the dropping or falling of any object therefrom." These are general and comprehensive terms and, when given their literal meaning, apply to any injury caused by the "flight of the aircraft" or any object or material that is dropped, or falls, or is ejected from an airplane while in flight, whether done intenionally or unintentionally. There is no language in the statute to indicate an intent to fasten strict liability upon the owner of an aircraft according to the nature of the object falling therefrom or the manner in which the descent is initiated. The terms "dropping" or "falling" clearly include acts of volition as well as accidental occurrences. The spraying or dusting of chemicals from an aircraft in flight, therefore, constitute the "dropping or falling" of an object therefrom within the meaning of the statute.

The terms of the statute are clear and unambiguous and leave no room for construction. They must therefore be applied according to their literal meaning. *Jones v. South Carolina State Highway Department*, 247 S. C. 132, 146 S. E. (2d) 166.

Assuming that aerial application of chemicals to crops was not practiced in 1929, when the statute was enacted, an assumption not supported by the record, that fact would not exclude the subsequently developed operation of aerial crop dusting and spraying from the application of the statute. Aerial crop spraying and dusting clearly falls within the purview and scope of the statutory language and is included within its application even though the business might not have been in existence at the time of its enactment. 82 C.J.S. Statute § 319.

There is no merit in appellant's further argument that the aerial application of chemicals is removed from the application of the statute (Section 55-3-60, supra) by the fact that the State through the Aeronautics Commission licenses aerial applicators. Since the State licenses crop spraying and dusting, appellant contends that such is privileged and not subject to the standards imposed by the statute. We disagree.

No statutory or other support is cited for the foregoing argument. We agree with respondent that the State licensing provisions were designed in an attempt to provide public safety for a hazardous activity. It is evident that in enacting Section 55-3-60 the Legislature intended to protect the public from hazards created by aviation. There is no basis for the conclusion that, in adopting the licensing requirements, the Legislature intended to exempt the operators of aircraft used in dusting or spraying from the liabilities imposed by Section 55-3-60. No such exemption is contained in the statutes and the plain meaning of the statutory language clearly refutes the present argument.

Appellant next contends that Section 55-3-60 violates the equal protection clause of the State and Federal Constitutions in that it places an arbitrary and unreasonable standard of liability on owners of aircraft. This constitutional attack is based on the fact that the initial part of the statute makes the owner absolutely liable while the

latter portion states that "an aeronaut who is not the owner or lessee shall be liable only for the consequences of his own negligence." It is argued that there is no justification for applying absolute liability to the owners of the aircraft and not to the operators.

The measure for determining equal protection is thus stated in *Hawkins v. Moss,* 503 F. (2d) 1171:

It is a familiar rule of constitutional law that a statute or rule promulgated under state authority will be found to violate equal protection *only* when it results in discrimination against a certain class and the classification is not rationally related to any legitimate state policy or interest.

We find no violation of appellant's right to equal protection. The difference in classification, for the purpose of liability, between the owners of aircraft and non-owner operators is soundly based (1) upon the fact that the owner has the responsibility of control and maintenance of the aircraft and logically should bear the burden to, in effect, insure its safety and airworthiness; and (2) upon the fact that the owner will usually be more financially able to bear the risk of loss than the operator. These are valid legislative purposes and the classification adopted to achieve these purposes is entirely reasonable and is sustained. *Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 N. J. 55, 159 A. (2d) 97, 81 ALR (2d) 1041.

The remaining two questions challenge the sufficiency of the evidence to sustain liability. Under the first, appellant argues that there was no proof at the conclusion of respondent's evidence that appellant owned the aircraft in question and that his motion for a nonsuit should have been granted.

Assuming that respondent did not produce evidence to establish appellant's ownership of the aircraft, such proof was supplied by appellant's later testimony that he sprayed crops adjacent to the pond during the time in question with an airplane owned by him. Appellant's admis-

sion of ownership required submission of that issue to the jury. This is in accord with the settled rule that it is unnecessary to consider on appeal a contention that a nonsuit should have been granted where the testimony of the defendant or his witnesses later supply the deficiency in the plaintiff's case. *Padgett v. Colonial Wholesale Distributing Company*, 232 S. C. 593, 103 S. E. (2d) 265; *Eargle v. Sumter Lighting Company*, 110 S. C. 560, 96 S. E. 909.

The last question involves appellant's contention that there was no evidence to prove that he allowed chemicals to pollute respondent's pond and that the flight of the aircraft or the dropping or falling of any object therefrom was the proximate cause of the damage sustained.

There was testimony that cotton was planted by one Zimmerman adjacent to respondent's pond in 1973 and that, in July 1973, during a period in which there had been no rain for several days, respondent went to his pond and found dead fish. A witness further testified that subsequent examination of water samples from the pond revealed levels of chemicals, known as 6-3 and Cotoran, sufficient to kill the fish; that the grass and weeds next to the pond were dead up to the water level and no cause could be found for the fish kill other than the chemicals in the water.

The owner of the cotton testified that in July 1973 he directed appellant to spray his crop adjacent to the pond with the chemical 6-3 and that, after the spraying, he went to the pond and saw dead fish. Appellant also testified that he sprayed the cotton next to the pond on July 10, 1973 with 6-3 and Cotoran.

The foregoing evidence amply sustains the conclusion that the spraying of crops adjacent to the fish pond caused the fish to die and required the submission of the issue of proximate cause to the jury for determination.

All exceptions are overruled and the judgment is affirmed.

LITTLEJOHN, NESS, RHODES and GREGORY, JJ., concur.