Edward **RODGERS** and Denise Rodgers, Plaintiffs,

v.

**ERICKSON AIR–CRANE CO., L.L.C.,** formerly known as EAC Development, L.L.C., the Erickson Company, formerly known as Erickson–Air Crane Co., and Chrysler Corporation, Defendants and Third–Party Plaintiffs,

v.

Gallagher–Kaiser Corporation and J.S. Alberici Construction Company, Inc., Third–Party Defendants.

No. C.A. 98C–07–014 WTQ.

Superior Court of Delaware, New Castle County.

Submitted: April 28, 1999.
Decided: July 30, 1999.

Richard A. Zappa, and Matthew P. Denn, Young, Conaway, Stargatt & Taylor, LLP., Wilmington, Delaware, for Plaintiffs.

Karen S. Brehm, Maron, Marvel & Wilks, P.A., Wilmington, Delaware, for Erickson Defendants.

## OPINION

QUILLEN, Judge.

This action for personal injuries arose from an accident that occurred during helicopter lift operations. Plaintiffs Edward and Denise Rodgers (collectively "Plaintiffs") filed a Complaint asserting negligence claims against, *inter alios,* the owners of the helicopter, Erickson Air–Crane Co., L.L.C. and The Erickson Company (collectively "Erickson"). Plaintiffs subsequently filed an Amended Complaint asserting, at Count V, an additional claim of absolute liability against Erickson pursuant to 2 *Del. C.* § 305 (1993).

The matter presently comes before the Court on Erickson's Motion to Dismiss Count V of the Amended Complaint for failure to state a claim upon which relief can be granted. For the following reasons, Erickson's Motion to Dismiss is **DENIED.**

### I. FACTS

On July 20, 1996, Erickson performed helicopter lift services for Third–Party Defendants Gallagher–Kaiser Corporation and J.S. Alberici Construction Co. ("Alberici") in conjunction with renovations at Defendant Chrysler Corporation's plant in Newark, Delaware. Erickson was autho-

rized—by both Chrysler and the FAA—to use a helicopter to dispose of old heating ventilation and air-conditioning ("HVAC") housings located atop one of Chrysler's buildings.

Mr. Rodgers' employer, Alberici, was the contractor responsible for disconnecting the old HVAC housings from the roof of the building and then attaching rigging lines so that the helicopter could hoist the units down to the parking lot. Once the HVAC housings were placed on the ground, another group of Alberici employees, including Mr. Rogers, was responsible for disconnecting the rigging lines from the helicopter.

At the time of the accident,. Mr. Rodgers was situated on top of a section of HVAC housing that had been placed in the parking lot when a gale from the helicopter's blades allegedly caused the section to up-end. As a result, Mr. Rodgers was propelled to the ground, allegedly causing serious injury. This suit followed.

## II. STANDARD OF REVIEW

■ ■ In evaluating a Motion to Dismiss under Superior Court Civil Rule 12(b)(6), the Court must assume all well pleaded facts in the Complaint to be true. *Nix v. Sawyer*, Del.Super., 466 A.2d 407, 410 (1983). For purposes of a Motion under Rule 12(b)(6), all allegations in the Complaint must be accepted as true. *State ex rel. Certain–Teed Products Corp. v. United Pacific Ins. Co.*, Del.Super., 389 A.2d 777, 778 (1978). A Complaint will not be dismissed unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. *Nix*, 466 A.2d at 410. A Complaint may not be dismissed unless it is clearly without merit, which may be a

matter of law or fact. *Diamond State*, 269 A.2d at 58.

## III. DISCUSSION

The present Motion to Dismiss involves Delaware's seldom utilized Uniform State Law for Aeronautics (the "Act"). Enacted in 1923, Delaware's Act is patterned after the Uniform Aeronautics Act (the "UAA") which was drafted by the Commission on Uniform State Laws in 1922. Over the course of the next twenty years, some twenty-three States adopted the UAA. In 1943, however, the Commission withdrew the UAA as obsolete. Not surprisingly, many States followed suit. Presently, Delaware is one of only four jurisdictions with a version of the UAA still on the books.[1] *See* Haw.Rev.Stat. §§ 263–1 to 263–11; N.J. Stat. Ann. §§ 6:2–1 to 6:2–12; S.C.Code Ann. §§ 55–3–10 to 55–3–120.

This case is evidently the first in this State to deal directly with the absolute liability provisions of the Act.[2] Both of the issues in this case involve the application of § 305 which imposes absolute liability on aircraft owners for damage caused to persons and property on the ground. Section 305 provides:

> The owner of every aircraft which is operated over the lands or waters of this State is absolutely liable for injuries to persons or property on the land or water beneath, caused by the ascent, descent or flight of the aircraft, or the dropping or falling of any object therefrom, whether such owner was negligent or not, unless the injury is caused in whole or in part by the negligence of the person injured, or of the owner or bailee of the property injured. If the aircraft is leased at the time of the injury to person or property, both owner and lessee shall be liable, and they may be sued

---

1. The historical information is provided for background purposes only. The Court expresses no doubt about the current validity of the Act in Delaware. As a gratuitous comment, however, it might be desirable for the General Assembly to consider whether the Act should be repealed.

2. The Act was cited in *Vanderslice v. Shawn*, Del. Ch., 27 A.2d 87 (1942). That case, however, did not directly involve the absolute liability provision of § 305.

jointly, or either or both of them may be sued separately. An aeronaut who is not the owner or lessee shall be liable only for the consequences of his own negligence. The injured person, or owner or bailee of the injured property, shall have a lien on the aircraft causing the injury to the extent of the damage caused by the aircraft or objects falling from it.

2 Del. C. § 305 (1993).[3]

The first issue here is whether § 305 applies in light of the fact that Mr. Rodgers was a participant in the helicopter lift operations. The second issue is whether § 305 has reference only to injuries caused as a result of a trespass, rather than those arising out of authorized flight operations. Before turning to these questions, however, it will be helpful to put § 305 in its proper perspective. The Court, therefore, will briefly discuss its common law origins.

### A. Absolute Liability under the Common Law

The historical underpinnings of § 305 can be traced back to the common law development of strict (or absolute) liability for abnormal conditions and activities in England. The principal case in this area is *Rylands v. Fletcher,* L.R., 3 H.L. 330 (1868). The rule announced in *Rylands v. Fletcher* imposes absolute liability on land owners who engage in extraordinary activities which involve an abnormally high degree of risk to others. The basis of liability, therefore, is the intentional behavior in exposing the community to such a risk, rather than traditional theories of fault. William L. Prosser, *The Law of Torts* § 59, at 317 (2d ed.1955) (hereinafter "Prosser, at ——").[4] Implicit in this concept is the notion that the ultimate financial risk of engaging in dangerous activities should be borne by the actors

themselves, rather than by unsuspecting members of the general public. *See generally* Prosser, at 315–318.

The principle of *Rylands v. Fletcher* slowly gained acceptance in the United States. One important reason for this initial hesitancy was the belief that strict liability was inimical to an expanding civilization. Prosser, at 332. "Dangerous enterprises, although involving a high degree of risk to others, were viewed as necessary to the industrial and commercial development of a new country and it was considered that the interests of those in the vicinity of such enterprises must give way to them . . . ." *Id.* Eventually, however, the pendulum turned toward the prevailing view that such hazardous enterprises, though they are socially valuable, must pay their way. *Id.*

In 1938, the American Law Institute ("Institute") embraced *Rylands v. Fletcher,* but confined the potential for absolute liability to persons engaging in "ultrahazardous activities." *See* Restatement of Torts § 519 (1938). The Institute defined an ultrahazardous activity as one which "necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care." Restatement of Torts § 520(a) (1938). Importantly, the benefit of absolute liability did not redound to the benefit of those potential plaintiffs who knowingly participated in the ultrahazardous activity. According to the Restatement:

> [Absolute liability] does not apply where the person harmed by the unpreventable miscarriage of an ultrahazardous activity has reason to know of the risk which makes the activity ultrahazardous and
>
> (a) takes part in it, or

---

**3.** The Court notes that any amount of contributory negligence under this statute appears to bar recovery. This construction would be consistent with the general law of contributory negligence at the time the statute was adopted. This issue, however, is not raised by the present Motion to Dismiss.

**4.** For a detailed discussion of *Rylands v. Fletcher,* see Prosser, at 329.

(b) brings himself within the area which will be endangered by its miscarriage . . . .

Restatement of Torts § 523 (1938).[5]

As far as aviation is concerned, the industry was, at least in its early stages, regarded as posing a significant threat to structures, individuals, and crops. *See* Restatement of Torts, § 520 cmt. b (1938) ("even the best constructed and maintained aeroplane is so incapable of complete control that flying creates a risk that the plane . . . may crash to the injury of persons and structures in the land"). Nonetheless, there were surprisingly few courts receptive to the idea of imposing absolute liability on the nascent industry. Prosser, at 346. A solution came in the form of specific legislation after the dangers associated with aviation prompted the Commission on Uniform State Laws to propose absolute liability for damage to persons or property on the ground. The specific legislation, however, did not embody all of the conceptual thinking that triggered its enactment.

Notably, the Commission—and subsequently, the Delaware General Assembly—did not recommend strict liability for all damages caused by the industry; injury to persons actually present on an aircraft at the time of a mishap, i.e., pilots and passengers, were not included. Although the legislative history in this regard is unclear, it is likely that the Commission, at that time, regarded air travel to be so hazardous that anyone choosing to enter an aircraft was deemed to have assumed the risk that it might crash. *See* Restatement of Torts § 523 cmt. e (1938) (in the absence of a showing of fault, one who "accepts a gift of air transportation with full knowledge of the dangers inseparable from it cannot recover for any harm which results from those dangers").

With this background in mind, the Court will turn to the issues presented by the instant Motion.

### B. Mr. Rodgers' Participation in the Helicopter Operations

■ Erickson first argues that the General Assembly did not intend the absolute liability provision of § 305 to apply in cases where the injured party was a participant in the aviation activity. It follows, Erickson submits, that the absolute liability claim is barred as a matter of law because Plaintiffs admit in the Complaint that Mr. Rodgers was derigging helicopter lines at the time of the injury. While Erickson makes a compelling policy argument consistent with common law principles, the Court does not agree that dismissal is appropriate given the particular statutory language.

■ Because the goal here is to ascertain and give effect to the intent of the legislature, the Court's inquiry must begin with the express language of the statute in question. In divining legislative intent, it is said that where the statute as a whole is unambiguous, the Court's role is limited to giving effect to the literal meaning of the words used. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del. Supr., 492 A.2d 1242, 1246 (1985). On the other hand, where the statute is ambiguous and its meaning may not clearly be ascertained, the Court must rely upon its methods of statutory interpretation and construction to divine legislative intent. *Id.*

■ As noted, § 305 provides that "the owner of every aircraft which is operated over the lands or waters of this State is absolutely liable for injuries to persons . . . on the land . . . beneath, caused by the ascent, descent or flight of the aircraft . . . whether such owner was negligent or not." 2 *Del. C.* § 305 (1993). The Court finds these terms clear and unambiguous. Restatement of Torts § 523 (1977).

---

**5.** This common law bar to recovery later fell under the rubric of assumption of risk. *See*

These are general and comprehensive terms which "apply to *any injury* caused by the 'flight of the aircraft' or any object or material that is dropped, or falls, or is ejected from an [aircraft] while in flight, whether done intentionally or unintentionally." *Green v. Zimmerman,* 269 S.C. 535, 238 S.E.2d 323, 324 (1977) (emphasis added).

Normally, the Court's analysis would end there. Erickson, however, makes an argument that § 305 is not as straightforward as it may seem. Erickson points out that § 305 applies *only* for injuries to persons and property on the ground, to the exclusion of those persons participating in the flight, i.e., pilots and passengers. Erickson also points out this statutory policy is entirely consistent with the common law bar on participants seeking to assert absolute liability under the law of ultrahazardous activities. *See, e.g., Whitlock v. Duke Univ,* D.N.C., 637 F.Supp. 1463, 1475 (1986), *aff'd,* 4th Cir., 829 F.2d 1340 (1987) (holding that diver participating in decompression experiments could not assert absolute liability claim under law of ultrahazardous activities).

While one is tempted to seize with relief upon the argument that the General Assembly intended to exclude all persons participating in aviation activity from the scope of § 305, including those on land, it is impossible to do that given the unambiguous language of the statute. In § 305 itself, the language is "absolutely liable for injuries to persons . . . on the land." Moreover, to the extent that the Uniform Aeronautics Act includes participants as part of the offending group, it talks about "aeronauts" (now "airperson" in Delaware) as people "having any part in the operation of aircraft *while in flight.*" 2 *Del. C.* § 301 (emphasis added). While this limited exclusion of participants from the benefits of absolute liability seems to fall short of that exclusion provided under common law principles, *see* Restatement of Torts, § 523 (1938), the claim here is based on statute. Whatever the Court's view as to policy, the Court cannot disregard the plain language of this statute, especially where, as here, imposing liability is consistent with the underlying policy of strict liability, i.e., shifting the risk of loss to those better able to bear it, and especially where it appears the General Assembly, albeit seventy-six years ago, made a conscious choice. If that choice be obsolete, the General Assembly should accomplish the repeal.

In short, the statute itself deals with Erickson's argument and draws the line between those participants in the air and those on the ground, the latter being included among the beneficiaries of the absolute liability provision under § 305.

## C. Liability While Performing Lawful Flight Operations

■ Erickson next contends that the General Assembly intended § 305 to apply only to damages caused as a result of a trespass, not those arising out of lawful flight operations. Erickson submits that dismissal is appropriate because the helicopter lift operations were authorized by both Chrysler and the FAA.

■ This argument is premised on another section of the Act, 2 *Del. C.* § 304 (1993 and 1994 Supp.) which deals with the lawfulness of flights and landings. Section 304 provides:

Flight in aircraft over the lands and waters of this State is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath.

No person shall land an aircraft on the lands or waters of another, without the owner's consent, except in the case of a forced landing. For damages caused by a forced landing, however, the owner . . . shall be liable, as provided in § 305 of this title.

This section serves three purposes. First, § 304 makes flight lawful, unless such flight amounts to a nuisance, trespass or otherwise poses a danger to persons or property on the ground. *See Vanderslice v. Shawn,* Del. Ch., 27 A.2d 87, 90 (1942) (low flight during landing, taking off, or otherwise, is expressly outside of the statutory definition of lawful flight; and being an unprivileged intrusion in the space above the land, such flight is a trespass). Second, with the exception of forced landings, the statute makes all unauthorized landings illegal. Third, § 304 makes owners absolutely liable for any damages resulting from forced landings.

Erickson points out that the Maryland Court of Appeals, upon considering Sections 304 and 305 together, concluded that the absolute liability provision did not apply to the lawful landing of an airplane at an airport, but rather had reference only to injuries to persons or property where the descent of the aircraft would be a trespass upon the rights of the land owner. *See Maryland v. Sammon,* 171 Md. 178, 189 A. 265, 271 (1936) (refusing to impose absolute liability where boy riding bicycle across an airport was struck and killed by a landing airplane).

Because § 304 makes both authorized and forced landings lawful, yet only provides absolute liability for the latter, it is possible to infer—as the Court did in *Sammon*—that the legislature did not intend the absolute liability provision of § 305 to apply to lawful landings of airplanes at an airport. But that situation is not presented here. This case involves consensual flight operations over the lands of this State, not landings. Erickson, however, seeks to extend the rationale in *Sammon* such that an aircraft owner is not absolutely liable under § 305 for any damages arising out of lawful flight operations.

In answering the question of whether the *Sammon* rationale should be extended beyond the context of landings, the answer, again, seems to lie in the statute. The second paragraph of § 304, the para-

graph previously relied on in *Sammon* to limit the broad sweep of § 305, is itself limited to landings and by implication may take consensual landings out of the absolute liability coverage of § 305. In contrast, there is no statutory language that directly relates to consensual flight operations at a low altitude. Accordingly, Plaintiffs are not barred from asserting a claim under § 305 even though the helicopter operations were lawful and did not amount to a trespass. *See Long v. United States,* D.S.C., 241 F.Supp. 286, 289 (1965)(fact that plaintiff signed a permit authorizing United States to enter upon his lands during Swift Strike maneuvers is not a bar to absolute liability under Uniform Aeronautics Act).

## IV. CONCLUSIONS

First, the statutory language of § 305 does not permit the exclusion of on-land participants in flight activity from the scope of statutory absolute liability benefits.

Second, Plaintiffs may assert a claim under § 305, notwithstanding the fact that Erickson's helicopter operations were lawful and did not amount to a trespass.

Accordingly, Erickson's Motion to Dismiss is **DENIED. IT IS SO ORDERED.**