# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

Christopher Ellington,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　　C.A. No: S25C-07-014 MHC
　　　　　　　　　　　　　　　　　　)
Oak View Group, LLC, Mike Boris,　　)
Peter Gardner and Kyle Langser,　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)
　　　　　　　　　　　　　　　　　　)

## OPINION AND ORDER

Submitted:  February 20, 2026
Decided:  April 29, 2026

*Upon Consideration of Defendant's Motion to Dismiss,* **GRANTED IN PART, DENIED IN PART.**

Rochelle Gumapac, Esquire and Sean A. Elman, Esquire, White & Williams, LLP, Wilmington, Delaware.

Michael C. Heyden, Jr., Esquire, and Joseph E. Brenner, Esquire, Gordon, Rees, Scully, Mansukani, LLP, *Attorneys for the Defendant*

Christopher Ellington, *Pro Se*

**CONNER, J.**

## PROCEDURAL POSTURE

Christopher Ellington ("Plaintiff") filed the Complaint on July 17, 2025. On September 22, 2025, Defendants filed a Motion for Extension of Time to file a response to the Complaint. Plaintiff filed a Motion for Default Judgment on September 30, 2025. The Court held a civil motion hearing on October 17, 2025, where the Court granted Defendants' Motion to Extend Time and denied Plaintiff's Motion for Default Judgment. On November 3, 2025, Plaintiff filed a Motion for Clarification regarding the denial of a default judgment against Defendants Kyle Langser and Peter Gardners ("Defendants"). The motion was denied on November 12, 2025. Defendants filed the instant Motion to Dismiss on November 16, 2025. On December 15, 2025, Plaintiff filed a Motion to Strike Defendant's "Answer and Motion to Dismiss and Motion for Order for Rule to Show Cause" again arguing a default judgment should be ordered. The Court denied the motion on December 30, 2025, instructing the Plaintiff to respond directly to the Motion to Dismiss. Plaintiff filed his Answering Brief in opposition of the Motion to Dismiss on February 3, 2026. Defendants filed their Reply Brief in support of the Motion to Dismiss on February 20, 2026.

## STATEMENT OF FACTS

Plaintiff brings suit against Oak View Group, LLC, Mike Boris, individually and in his official capacity, Kyle Langsner, individually and in his official capacity, and Peter Gardner, individually and in his official capacity. The civil action is for defamation, extortion and coercion, tortious interference with prospective economic advantage, breach of employment contract and promissory estoppel, fraud and misrepresentation, and intentional infliction of emotional distress ("IIED"). Defendant Kyle Langsner and Defendant Peter Gardner ("Defendants") bring the instant Motion to Dismiss.

Plaintiff brings a defamation claim against both Defendants. Plaintiff also brings an extortion and coercion claim, a tortious interference with prospective economic advantage claim, a fraud and misrepresentation claim, and an IIED claim against Defendant Langsner. Defendants seek to dismiss all claims against them.

Plaintiff was recruited by Oak View Group in August of 2024 to work as the Executive Chef of the Heritage Shores Resort in Bridgeville, Delaware.[1] Defendant Mike Boris was the Vice President of Oak View Group. Defendant Langsner was the general manager at Heritage Shores. Defendant Gardner was the property

---

[1] Compl., D.I. 1, at 2.

3

manager for Kemper Sports.  In summer of 2025, the management of Heritage Shores Resort changed from Oak View Group to Kemper Sports.[2]

Plaintiff seeks damages for alleged torts arising from his employment at Heritage Shores Resort.  Plaintiff alleges that the supervisor of Oak View Group, Defendant Boris, promised Plaintiff a $10,000 signing bonus.[3]  This was a verbal promise that was "reaffirmed verbally and through ongoing communications" with leadership at Oak View Group.  Plaintiff did not receive the bonus.  In June of 2025, Plaintiff alleges that Defendant Langsner warned him of a corporate transition and suggested that Plaintiff look for another job.  During this conversation, Defendant Langsner allegedly told Plaintiff that he would be paid for his remaining two weeks and offered to act as a reference for new jobs.  Plaintiff alleges that Defendant Langsner disrupted hiring procedures to keep Plaintiff understaffed and routinely gave contradicting instructions to the staff under Plaintiff's supervision.  Plaintiff further alleges that Defendant Langsner was operating an illicit drug operation involving employees that were under Plaintiff's supervision.

Plaintiff contends Defendant Langsner, Defendant Boris, and Defendant Gardner held private meetings and intentionally excluded Plaintiff.  During these meetings, Plaintiff states that Defendant Langsner made defamatory statements

---

[2] Def. Langsner and Def. Gardner Mot. to Dismiss ("Mot. to Dismiss"), D.I. 30, at 2.
[3] Compl., D.I. 1, at 2.

about Plaintiff, portraying Plaintiff as unreliable, chronically absent, and unfit for rehire. Plaintiff claims these statements prevented him from being rehired by Defendant Gardner, the incoming property manager for Kemper Sports, who was to take over operations from Oak View Group. Defendant Langsner allegedly continued to tell staff and the community that Plaintiff was absent, and he had been terminated for performance issues. Plaintiff states that he applied to, and was denied employment from, six different culinary positions. He asserts that several employers were initially interested, until speaking with his reference, Defendant Langsner.

**PARTIES' CONTENTIONS**

**A. Defendants' Motion to Dismiss**

Defendants filed the instant Motion to Dismiss pursuant to Superior Court Civil Rule 12(b)(6).[4] Defendants argue that the Complaint fails as a matter of law because Plaintiff does not allege the necessary facts to support the claims.

Defendants argue that Plaintiff has failed to establish Defamation. First, Plaintiff does not allege that Defendant Gardner made a defamatory statement. Defendant Gardner was told the alleged defamatory statement by Defendant Langsner. Defendants argue that the defamation claim against Defendant Langsner must fail as well because the Complaint lacks factual support. Additionally, Plaintiff

---

[4] *Id.* at 1.

does not allege that he suffered "special damages," which is a requirement for oral defamation.

Next, Defendants argue that Plaintiff's extortion and coercion claim fails as a matter of law. No civil action for extortion or coercion exists in the state of Delaware.

Additionally, Defendants argue that the alleged facts are insufficient to state a claim for tortious interference with a prospective economic advantage. Plaintiff cannot prove the necessary elements because Plaintiff has not established a reasonable probability of a prospective business opportunity, and the Complaint does not contain sufficient factual allegations.

Defendants also argue that Plaintiff is unable to state a claim for fraud and misrepresentation against Defendant Langsner. Plaintiff has failed to meet the heightened pleading requirement for a fraud claim.

Lastly, Defendants argue that the Complaint does not support a claim for IIED. Plaintiff only vaguely alleges that Defendants intentionally inflicted severe emotional distress upon him.

For these reasons, Defendants ask the Court to grant Defendants' Motion to Dismiss.

## B. Plaintiff's Response to Defendants' Motion to Dismiss

First, Plaintiff asks the Court to review the "unresolved issues" that were addressed in Plaintiff's Motion to Strike, which was filed on December 15, 2025.[5] On December 30, 2025, the Court denied Plaintiff's Motion to Strike.

Next, Plaintiff asserts that he adequately pled a defamation claim against Defendant Langsner. Plaintiff alleges that defamatory statements were made to third parties and prospective employees, who understood the statements as defamatory, thereby causing injury to Plaintiff. Furthermore, special damages have been adequately pled because Plaintiff lost job opportunities, secure housing, and wages. However, Plaintiff argues the statements are defamatory per se, therefore he is not required to prove special damages. Plaintiff admits that the defamatory statements did not originate from Defendant Gardner, but his conduct further supports Plaintiff's claims for tortious interference with contract and civil conspiracy.

Plaintiff admits that Count II, extortion and coercion, are not civil claims. Plaintiff asks the Court to either construe Count II as a civil retaliation claim, an IIED claim, and a tortious interference with prospective economic advantage claim, or grant Plaintiff leave to amend his Complaint.

Next, Plaintiff alleges that he adequately pled a claim for tortious interference with prospective economic advantage. Plaintiff argues that he pled he was in active

---

[5] Pl.'s Resp. to Defs.' Mot. to Dismiss, D.I. 37, at 7-8.

discussions for a position at Brandywine Senior Living.  He also spoke with six additional prospective employers who withdrew or ceased employment discussions after checking his references.  Plaintiff argues there was a reasonable probability of achieving these business relations.  Furthermore, Plaintiff adequately pled that Defendant Langsner used wrongful means by making false and defamatory statements to prospective employers.

Next, Plaintiff argues that fraud was pled with particularity by alleging who, what, where, when, and why the alleged fraud occurred.  Plaintiff relied upon the alleged fraudulent statements and suffered damages by not receiving the $10,000 bonus, leave benefits, or event compensation.  Plaintiff also suffered lost wages.

Lastly, Plaintiff argues that IIED was adequately pled.  There are sufficient allegations of extreme and outrageous conduct.  Plaintiff has suffered severe emotional distress as a result of Defendant Langsner's conduct.

For these reasons, Plaintiff asks the Court to deny Defendants' Motion to Dismiss.

### C. Defendants' Reply Brief

First, Defendants ask the Court to decline Plaintiff's request to reconsider previously decided arguments.[6]  Plaintiff did not file a motion for reargument within five days of the Court's decision, as required by the Superior Court Rules of Civil

---

[6] Defs.' Reply Br., D.I. 38, at 1-2.

Procedure. Also, Defendants argue that the Court should not grant Plaintiff leave to amend the Complaint because amendment would be futile. The claims are deficient.

Next, Defendants argue that Plaintiff's IIED claim must be dismissed. Plaintiff attempts to cure the Complaint's defects by adding facts in his Responsive Brief that were not contained in the Complaint.

Additionally, Plaintiff has failed to establish a claim for tortious interference with a prospective business. Plaintiff does not establish a reasonable probability of a prospective business opportunity or an intentional and wrongful interference. Plaintiff attempts to insert new facts not alleged in the Complaint.

Furthermore, Defendants argue that the fraud and misrepresentation claim against Defendant Langsner is unsupported. In his brief, Plaintiff admits that Defendant Langsner did not make, or actively participate in making, a false representation. Instead, it was Defendant Boris and Kevin Levett who committed such acts. Therefore, the fraud claim is not adequately pled.

Lastly, Defendants argue the defamation claims against Defendant Gardner and Defendant Langsner fail as a matter of law. The Complaint does not allege that Defendant Gardner made any defamatory claims. Additionally, there is no evidence that Defendant Langsner made a comment that could be considered defamatory or that Plaintiff suffered special damages. Defendants argue that Plaintiff's claims are conclusory statements unsupported by facts.

9

For these reasons, Defendants ask the Court to grant the Motion to Dismiss.

## STANDARD OF REVIEW

In evaluating a Motion to Dismiss under Superior Court Rule 12(b)(6), failure to state claim in which relief can be granted, the Court must assume all well-pleaded facts in the complaint to be true.[7] A complaint will not be dismissed unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[8] A complaint may not be dismissed unless it is clearly without merit, which may be a matter of law or fact.[9] Delaware Courts have found that even vague allegations are considered "well-pled" so long as it gives the defendants notice of the claim.[10] The trial court is not required to accept conclusory allegations as true "without specific supporting factual allegations."[11] The Court is not required "to accept every strained interpretation of the allegations proposed by the plaintiff."[12]

## DISCUSSION

**A. The Court will not Reconsider Plaintiff's Motion to Strike.**

---

[7] *Rodgers v. Erickson Air-Crane Co., L.L.C.*, 740 A.2d 508, 510 (Del. Super. Ct. 1999) (citing *Nix v. Sawyer*, 466 A.2d 407, 410 (Del. Super. Ct. 1983)).
[8] *Outdoor Techs. Inc. v. Allfirst Fin. Inc.*, 2000 WL 141275, at *3 (Del. Super. Ct. 2000) (citing Nix, 466 A.2d at 410)).
[9] *Id.* (citing *Diamond State Tel. Co. v. Univ. of Del.*, 269 A.2d 52, 58 (Del. 1970)).
[10] *Id.*
[11] *Id.* (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del.1995)).
[12] *Id.* (quoting *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001)).

The Court will not reconsider Plaintiff's Motion to Strike as it is untimely. Delaware Superior Court Civil Rule 59 states that a motion for reargument "shall be served and filed within 5 days after the filing of the Court's opinion or decision."[13] The Court issued its Order denying Plaintiff's Motion to Strike on December 30, 2025. Plaintiff filed his Response to Defendants' Motion to Dismiss on February 3, 2026. Plaintiff's request for reargument is untimely.

**B. Defendants' Motion to Dismiss the Defamation Claim is Partially Granted.**

Plaintiff brings a defamation claim against Defendant Langsner and Defendant Gardner. The defamation claim against Defendant Gardner must be dismissed, but the defamation claim against Defendant Langsner must survive the Motion to Dismiss.

Delaware Courts have found that "[a] statement is defamatory when it 'tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"[14] In defamation cases, "the threshold for the showing a plaintiff must make to survive a motion to dismiss is low. Delaware is a notice pleading jurisdiction. Thus, for a complaint to survive a motion to dismiss, it need only give general notice of the

---

[13] Del. Super. Ct. Civ. R. 59(e).
[14] *Cousins v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022).

claim asserted."[15]   Under Delaware law, the plaintiff must prove: "(1) Defendant made a defamatory statement; (2) concerning Plaintiff; (3) the statement was published; and (4) a third party would understand the character of the communication as defamatory."[16]   Defamatory statements can either be written (libel) or oral (slander).[17]   Libel and slander are "twin torts."[18]   However, slander claims, unlike libel, generally require the plaintiff to prove special damages.[19] "Special harm is the loss of something having economic or pecuniary value."[20] There are four exceptions under slander per se that do not require proof of special damages: (1) statements that impute a crime; (2) statements that malign one in trade, business, or profession; (3) statements that imply that one has a loathsome disease; or (4) statements that impute unchastity to a woman.[21]

Additionally, statements made in the context of an employer-employee relationship are subject to a qualified privilege.[22]   "A qualified privilege extends to communications made between people who have a common interest for the protection of which the allegedly defamatory statements that are made or which are

---

[15] *Cousins v. Goodier*, 2021 WL 3355471, at *2 (Del. Super. Ct. 2021), *aff'd,* 283 A.3d 1140 (Del. 2022)(quoting *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005)).
[16] *Cousins*, 2021 WL 3355471, at *3.
[17] *Preston Hollow Cap. LLC v. Nuveen LLC*, 216 A.3d 1, 9 (Del. Ch. 2019).
[18] *Id.*
[19] *Id.*
[20] *Preston Hollow Cap. LLC v. Nuveen LLC*, 2022 WL 2276599, at *3 (Del. Super. Ct. 2022)
[21] *Preston Hollow Cap. LLC*, 216 A.3d at 10, n. 58.
[22] *Masterson-Carr v. Anesthesia Servs., P.A.*, 2015 WL 5168557 (Del. Super. Ct. 2015).

12

disclosed to any person who has a legitimate expectation in the subject matter."[23]  If a conditional privilege applies, the plaintiff must show actual malice.[24]  However, if there is no showing of actual malice, then the action is defeated.  The standard for actual malice is high.  The plaintiff must show "that the statements were made primarily to further interests other than those protected by the qualified privilege and that the chief motive for making such statements was the defendant's ill will."[25]  Generally, whether the conditional privilege has been abused is a factual question for a jury, unless the facts in the light most favorable to the plaintiff are insufficient to raise a factual question "upon which reasonable men might differ."[26]

Plaintiff has not established a defamation claim against Defendant Gardner.  Plaintiff does not allege that Defendant Gardner made any defamatory comment about Plaintiff, but rather that Defendant Langsner made a defamatory statement about Plaintiff to Defendant Gardner.  The first element of a defamation claim requires the plaintiff to show that Defendant has made a defamatory statement.  Plaintiff has not established the first element of a defamation claim against Defendant Gardner, therefore the Court will end its analysis here.  The defamation claim against Defendant Gardner must be dismissed.

---

[23] *Id.* at 17.
[24] *Id.*
[25] *Id.*
[26] *Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1982).

However, the defamation claim against Defendant Langsner must survive the Motion to Dismiss. Plaintiff alleges that Defendant Langsner "knowingly made false, malicious statements" about Plaintiff, thereby satisfying the first and second elements of a defamation claim.[27] While Plaintiff does not specifically quote the alleged defamatory statement, Plaintiff pled that Defendant Langsner portrayed him as "unreliable, chronically absent, and unfit for rehire."[28] The statements were made to a third party, Defendant Gardner and prospective employers, thereby establishing the second element of a defamation claim.[29] Plaintiff alleges that the statements caused harm to him and his reputation, establishing the fourth element, that a third party would understand the character of the communication as defamatory.[30] Because the statement was slander, Plaintiff must allege special damages or that an exception for slander per se applies. The Complaint alleges that Plaintiff was denied employment at multiple institutions and the statements were made with the purpose of causing harm to his professional reputation.[31] This allegation is sufficient to establish special damages at this stage of litigation.

Additionally, at this stage, the defamation claim will not be dismissed due to a privileged immunity, as this is a question for a jury. In the Complaint, Plaintiff

---

[27] Compl., D.I. 1, at 5.
[28] *Id.* at 4.
[29] *Id.* at 6.
[30] *Id.*
[31] *Id.*

alleges that the statements were made with actual malice, ill will, and to sabotage Plaintiff's reputation and future employment opportunities. The Complaint specifically states that a qualified privilege does not apply because the statements were made with retaliatory intent and outside of normal business.[32]

Aforementioned, the pleading standard in Delaware is minimal. The Compliant is sufficient to put Defendant Langsner on notice of the defamation claim against him. Plaintiff has not sufficiently pled a defamation claim against Defendant Gardner. For these reasons, the Motion to Dismiss the defamation claim against Defendant Gardner is **GRANTED** and the Motion to Dismiss the defamation claim against Defendant Langsner is **DENIED**.

### C. Defendant Langsner's Motion to Dismiss the Tortious Interference with Prospective Economic Advantage Claim is Granted.

Plaintiff's tortious interference with prospective economic advantage against Defendant Langsner should be dismissed. Under Delaware law, to bring a tortious interference with prospective economic advantage claim, the plaintiff must demonstrate: (1) the reasonable probability of a business opportunity; (2) intentional interference with that opportunity; (3) proximate causation; and (4) damages.[33]

---

[32] *Id.*

[33] *World Energy Ventures, LLC v. Northwind Gulf Coast LLC*, 2015 WL 6772638, at *6 (Del. Super. Ct. 2015)

When analyzing the reasonable probability of a business opportunity, Delaware courts "permit[ ] a broad range of legitimate business expectancies, including the 'prospect of ... [any] relations leading to potentially profitable contracts.'"[34]  However, "the mere perception of a prospective relationship" is not sufficient.   While the plaintiff does not need to specifically name the parties involved in the prospective business opportunity, it must be reasonably probable. "To be reasonably probable, a business opportunity must be 'something more than a mere hope or the innate optimism of the salesman' or a 'mere perception of a prospective business relationship.'"[35]

In *Agilent Technologies, Inc. v. Kirkland*, the Court found there was a justifiable expectation of business with an unnamed party because the plaintiff alleged the incidents in enough detail, including dates, which showed a "specific prospective business relations" existed.[36]  The Court found that the plaintiff's allegations were "not the type of vague statements about unknown costumers that courts usually reject."[37]  In the case, *World Energy Ventures, LLC. V. Northwind Gulf Coat, LLC*, the Superior Court found that a list identifying seventeen different investors that would have contributed to a fund, had the defendant not interfered,

---

[34] *Id.* at *7.
[35] *Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *7 (Del. Ch. 2009).
[36] *Id.* at *7.
[37] *Id.*

16

was sufficient to survive a motion to dismiss.[38]  However, in *Kimbleton v. White*, the District Court for the District of Delaware found that an allegation stating the defendant's conduct interfered with "all prospective home buyers" was insufficient to establish a reasonable probability of business opportunity.[39]  In the case, *Lipton v. Anesthesia Services, P.A.*, the Court found that the plaintiff had established this element by identifying several candidates for employment with whom the plaintiff sought to establish an employment relationship with.[40]  The defendant allegedly approached the candidates with threats or misinformation about the plaintiff and the viability of his new medical practice.[41]

Delaware Courts have found that interference with a prospective business relation is intentional "if the actor desires to bring it about or if he [or she] knows that the interference is certain or substantially certain to occur as a result of his [or her] action."[42]  "An alleged interference in a prospective business relationship is only actionable if it is wrongful or improper."[43]  While Delaware Courts generally apply the factors outlined in the Restatement (Second) of Torts to determine whether an interference with prospective business relations is improper, it is "typically a

---

[38] *World Energy Ventures, LLC*, 2015 WL 6772638, at *6.
[39] *Id.* at 7 (see also *Kimbleton,* 2014 WL 4386760, at *8 (D. Del. 2014)).
[40] 790 A.2d 1261, 1286 (Del. Super. Ct. 2001).
[41] *Id.*
[42] *World Energy Ventures, LLC*, 2015 WL 6772638, at *8.
[43] *Id.* (quoting *Agilent Techs., Inc.,* 2009 WL 119865, at *7).

17

question of fact for the jury."[44]  The plaintiff bears the burden of establishing all of the factors, including that the interference was improper.[45]

Lastly, the plaintiff must prove causation and damages.  Causation and damages are "generally left to the jury to determine."[46]  In *World Energy Ventures*, the claimant alleged that it suffered damages, including lost profits, as a direct and proximate result of the alleged tortious interference.[47]  The Court found the allegation was sufficient in the pleading stage and that the movant will have the opportunity to develop the case in discovery to establish these elements.[48]

In the present case, Plaintiff has not established the aforementioned elements necessary to state a claim for tortious interference with prospective economic advantage.  There are insufficient facts to establish the first element, a reasonable probability of a business opportunity.  It is important to note, however, that pages seem to be missing from the Complaint, specifically in the middle of the claim.  However, based on the allegations set forth in the pages of the Complaint that were filed with the Court, the claim against Defendant Langsner for tortious interference with prospective economic advantage must be dismissed.

---

[44] *World Energy Ventures, LLC*, 2015 WL 6772638, at *9; see also *Lipson*, 790 A.2d at 1287.
[45] *Id.*
[46] *Id.* at *10.
[47] *Id.*
[48] *Id.*

The allegations in the present case seem to align with the facts presented in *Kimbleton v. White*, where the plaintiff alleged that the defendants' conduct interfered with business relations with "all prospective home buyers." In the Complaint, Plaintiff alleges that he applied to "at least six executive-level culinary positions in Sussex and surrounding counties."[49] While it is not a requirement for the plaintiff to name the prospective employers, the plaintiff is required to plead sufficient facts for the Court to determine whether a prospective business relation existed. Plaintiff alleges that several employers expressed an initial interest prior to calling Defendant Langsner, Plaintiff's listed reference, but there is no evidence that it was more than an inquiry or an application for employment.[50] Plaintiff alleges that he was denied job interviews.[51] An initial interview is not sufficient to establish a prospective business relation.

Plaintiff's allegations do not show that a "specific prospective business relation" existed.[52] Rather, it shows that Plaintiff had a "mere perception of a prospective relationship," not one which was reasonably probable. Plaintiff has not established that he had a reasonable probability of an economic advantage.

---

[49] Compl., D.I. 1, at 4.
[50] *Id.*
[51] *Id.* at 8.
[52] *Agilent Techs., Inc.*, 2009 WL 119865, at *7.

In his Response to Defendants' Motion to Dismiss, Plaintiff states that he identified "concrete prospective relationships," and claims that he listed Brandywine Senior Living as a prospective employer.[53]  However, this is not alleged in the Complaint.  As aforementioned, it appears that there are pages missing from the Complaint.  Even so, Plaintiff does not allege more than a "mere perception of a prospective business relationship."[54]

Plaintiff has not sufficiently pled a claim under tortious interference with a prospective economic advantage because Plaintiff has not established a reasonable probability of a business opportunity.  Because of this, the Court does not need to continue its analysis for the remaining factors.  For these reasons, the Motion to Dismiss Count III, tortious interference with prospective economic advantage, is **GRANTED**.

### D. Defendant Langsner's Motion to Dismiss the Claim for Fraud and Misrepresentation is Granted.

Plaintiff's claim for fraud and misrepresentation against Defendant Langsner must be dismissed because Plaintiff has failed to sufficiently plead a claim for fraud or misrepresentation.

Civil Rule 9(b) states that "[i]n all averments of fraud, negligence or mistake, the circumstances constituting fraud, negligence or mistake shall be stated

---

[53] Pl.'s Resp. to Defs.' Mot. to Dismiss, D.I. 37, at 12.
[54] *Agilent Techs., Inc.*, 2009 WL 119865, at *7.

with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally."[55] Delaware Courts have found that to comply with Civil Rule 9(b), a well-pled fraud claim must include at least "the time, place, and contents of the false representation."[56] In addition to the pleadings requirements under Civil Rule 9(b), to prevail on a claim for fraud or intentional misrepresentation, the plaintiff must show:

> (1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose, (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth, (3) the defendant intended to induce the plaintiff to act or refrain from acting, (4) the plaintiff acted in justifiable reliance on the representation, and (5) the plaintiff was injured by its reliance.[57]

Plaintiff alleges Defendant Langsner "knowingly misrepresented material facts related to compensation, performance evaluations, and disciplinary actions."[58] Plaintiff includes a few examples, such as the promise of a signing bonus, false disciplinary accusations, and the concealment of the resort obtaining new management.[59] Plaintiff alleges that "Defendants' actions were calculated, done with malicious intent to deceive, and directly caused harm to Plaintiff's finances and

---

[55] Del. Super. Ct. Civ. Pro. R. 9(b).
[56] *Iacono v. Barici*, 2006 WL 3844208, at *2 (Del. Super. Ct. 2006)(quoting *Browne v. Robb,* 583 A.2d 949, 955 (Del.1990)).
[57] *Id.* (quoting *DCV Holdings, Inc. v. ConAgra, Inc.,* 889 A.2d 954, 958 (Del.2005)).
[58] Compl., D.I. 1, at 12.
[59] *Id.*

career."[60]  Plaintiff's claim asserts general allegations against Defendant Langsner, Defendant Oak View Group, and Defendant Boris.

Plaintiff alleges that Kevin Levett promised a signing bonus.  There is no mention of Defendant Langsner falsely representing a signing bonus to Plaintiff.  Plaintiff alleges that this promise was reaffirmed by Oak View Group leadership, but does not state that Defendant Langsner made any representations about a signing bonus.  This allegation is not well-pled because it is not stated with particularity.

Plaintiff alleges that there were false disciplinary accusations, referring to a workplace violence course that was assigned to Plaintiff by the resort's human resources department.  Plaintiff alleges that he was assigned this course after he reached out to human resources to report misconduct of Defendant Langsner.  Plaintiff alleges he never received a response and was assigned the workplace violence course instead.  However, Plaintiff does not establish how or why this amounts to fraud or misrepresentation, or that Defendant Langsner had any involvement in assigning Plaintiff the workplace violence course.  The human resource department of Defendant Oak View Group assigned the course.  Therefore, this claim is not stated with particularity against Defendant Langsner.

Plaintiff claims fraud and misrepresentation due to the concealment of a new management company taking over the resort.   However, Plaintiff has failed to

---

[60] *Id.*

22

sufficiently plead the necessary elements to establish fraud and misrepresentation. In the fact section of the Complaint, Plaintiff alleges that Defendant Langsner informed him of the new change in management. It is unclear how this amounts to fraud and misrepresentation. It is possible that Plaintiff seeks to allege that the statements made to Plaintiff after he was informed of the change in management are fraudulent and intentional misrepresentations, but even so, this claim must fail. First, claims for fraud must be pled with particularity. It is unclear who concealed the resort's transition to new management or if the alleged concealment amounts to fraud and misrepresentation. Plaintiff alleges that Defendant Langsner told Plaintiff to start looking for new jobs, that he would "cover" for Plaintiff, that Plaintiff would be paid for the remaining two weeks of employment and offered to act as a reference for Plaintiff.[61] However, even when viewed in the light most favorable to Plaintiff, these facts are insufficient to establish a claim for fraud and misrepresentation. As mentioned above, Plaintiff makes general assertions regarding Defendant Langsner, Defendant Oak View Group, and Defendant Boris. Plaintiff has not pled each averment with particularity. Plaintiff has not pled that Defendant Langsner's actions constituted fraud and misrepresentation.

In his Response to Defendants' Motion to Dismiss, Plaintiff alleges that Defendant Boris and Kevin Levett committed fraud, with the knowledge of

---

[61] *Id.* at 3.

Defendant Langsner, by promising additional compensation for events, paid vacation/sick pay, severance, and additional event-based compensation.[62] However, the alleged fraud was committed by Defendant Boris and Kevin Levett, not Defendant Langsner. Having knowledge of fraudulent behavior is insufficient alone to survive a Motion to Dismiss.

Plaintiff has not established the necessary elements for a fraud and misrepresentation claim, nor has he pled each averment with particularity. For these reasons, the Motion to Dismiss the fraud and misrepresentation claims against Defendant Langsner is **GRANTED**.

### E. Defendant Langsner's Motion to Dismiss the Claim for IIED is Granted.

Plaintiff's IIED claim should be dismissed. Plaintiff has failed to plead sufficient facts to establish a claim for IIED against Defendant Langsner.

Delaware Courts apply the Restatement (Second) of Torts when analyzing IIED claims. An IIED claim arises when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."[63] Delaware Courts have interpreted "extreme and

---

[62] Pl.'s Resp. to Defs.' Mot. to Dismiss, D.I. 37, at 14.

[63] *Light Years Ahead, Inc. v. Valve Acquisition, LLC*, 2021 WL 6068215, at *11 (Del. Super. Ct. 2021)(quoting *Spence v. Cherian*, 135 A.3d 1282, 1288-89 (Del. Super. Ct. 2016)).

outrageous conduct" to be "conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community."[64] "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery[.]"[65] If reasonable minds may differ on whether a defendant's conduct is "extreme or outrageous," then the question is left for the jury.[66]

The Restatement (Second) of Torts provides the Court with guidance for determining extreme and outrageous conduct in the following:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim Outrageous![67]

In the case, *Tekstron, Inc. v. Savla*, the Court found extreme and outrageous conduct "when an employer threaten[ed] an employee with deportation, lawsuits,

---

[64] *Id.* (quoting *Hunt ex rel. DeSombre v. State of Delaware*, 69 A.3d 360, 367 (Del. 2013)).
[65] *Hunt ex rel. DeSombre*, 69 A.3d at 367.
[66] *Id.*
[67] *Collins v. Afr. Methodist Episocopal Zion Church*, 2006 WL 1579718, at *2 (Del. Super. Ct. 2006).

false criminal charges, and sabotage of his professional career."[68]  In *Hunt ex rel. DeSombre v. State et. al.*, the Court found extreme and outrageous conduct when a uniformed police officer threatened and scared an eight-year-old boy so severely that he was home schooled for the remainder of the school year.[69]  Additionally, in the case *Adams v. Aidoo*, the Superior Court denied a motion for a new trial and found that the jury's finding of IIED was supported by the facts of the case.[70]  Adams had asserted numerous legal claims against the Aidoos and sought $21 million in damages for those claims.[71]  Adams also nearly hit the Aidoos' children when they were walking home from their bus stop, sprayed them with her watering hose, threatened to get a pit bull to attack the Aidoos, and made racial comments.[72]  In all of these cases, it is clear that the conduct was extreme and outrageous.

In comparison to the above-mentioned cases, it is clear to the Court that Plaintiff has not pled extreme or outrageous conduct by Defendant Langsner. Plaintiff states that Defendant Langsner "conspires to defraud and defame" and pushes people aside if they "get in the way of his ultimate goal."  Plaintiff generally asserts that the defendants "intentionally inflicted severe and emotional distress"

---

[68] *Tekstrom, Inc. v. Savla*, 2006 WL 2338050, at *12 (Del. Super. Ct. 2006), *aff'd*, 918 A.2d 1171 (Del. 2007).
[69] *Hunt ex rel. DeSombre* 69 A.3d at 360.
[70] *Adams v. Aidoo*, 2012 WL 1408878, at *12 (Del. Super. Ct. 2012), *aff'd*, 58 A.3d 410 (Del. 2013).
[71] *Id.* at * 11.
[72] *Id.*

upon Plaintiff "and covered up their actions through and with Human Resources . . . ."[73] Absent in the pleading is an allegation that Defendant Langsner acted extreme and outrageously. Plaintiff states that Defendant Oak View Group, Defendant Boris, and Defendant Langsner knew Plaintiff was a disabled veteran and that Plaintiff would report employees who commit illicit activities.[74] Plaintiff also states that Defendant Langsner informed Plaintiff that Plaintiff "would lose his job if [Plaintiff] disclosed [his] ongoing distribution of controlled substances at the workplace."[75] Even though Plaintiff alleges that Defendant Langsner threatened him, this does not rise to the level of extreme or outrageous conduct. A mere threat is not sufficient to rise to the level of extreme and outrageous conduct. The issue does not need to go to a jury because reasonable minds would not differ. It is not a case "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim Outrageous!"[76]

As mentioned above, the Court has the first instance to determine whether conduct rises to the level of extreme or outrageous. If reasonable minds could differ on whether conduct was extreme or outrageous, then the issue is for a jury. However, based on the cases analyzed above and the facts pled in the Complaint, Defendant

---

[73] Compl., D.I. 1, at 13.
[74] *Id.* at 13.
[75] *Id.* at 7.
[76] *Collins*, 2006 WL 1579718, at *2.

Langsner's conduct does not rise to the level of extreme or outrageous. For these reasons, Defendant Langsner's Motion to Dismiss the IIED claim is **GRANTED**.

**F. Defendant Langsner's Motion to Dismiss the Extortion and Coercion Claims is Granted.**

Plaintiff's extortion and coercion claim against Defendant Langsner should be dismissed. Extortion and coercion are not civil claims. 11 *Del. C.* § 846 defines extortion under the Delaware criminal code. Similarly, 11 *Del. C.* § 791 defines coercion under the Delaware criminal code. Plaintiff concedes that a civil cause of action for coercion and extortion does not exist.

However, Plaintiff asks the Court to either construe Count II, extortion and coercion, as a part of Plaintiff's IIED claim and retaliation claims, or grant Plaintiff leave to amend the Complaint to include this allegation as a civil tort. However, Plaintiff incorporated all preceding allegations by reference into his claims. Therefore, the Court analyzed the Complaint as a whole when determining whether the claims were sufficiently pled. However, the Court will not grant leave to amend the Complaint. Amendments to the Complaint would be futile.

In conclusion, the Motion to Dismiss the extortion and coercion claims against Defendant Langsner must be granted.

**CONCLUSION**

Plaintiff has not pled that Defendant Gardner made any defamatory statements about Plaintiff. However, Plaintiff has sufficiently pled a defamation claim against

28

Defendant Langsner. For these reasons, Defendants' Motion to Dismiss the defamation claim should be partially granted. The Motion to Dismiss the defamation claim against Defendant Gardner is **GRANTED** and the Motion to Dismiss the defamation claim against Defendant Langsner is **DENIED**. Defendants' Motion to Dismiss the extortion and coercion claims is **GRANTED**. Defendants' Motion to Dismiss the intentional interference with prospective economic advantage is **GRANTED**. Lastly, the Motion to Dismiss the IIED claim is **GRANTED**.

    **IT IS SO ORDERED.**

/s/ *Mark H. Conner*

Mark H. Conner, Judge

oc:    Prothonotary